## 55857. McELWEE v. THE STATE.

McMURRAY, Judge.

Defendant was indicted in two counts of homicide by vehicle resulting from a head-on collision between a 1972 Monte Carlo automobile driven by the defendant and a 1974 Volkswagen automobile occupied by two persons who were killed. As to both counts the defendant was alleged to be driving in reckless disregard for the safety of others while under the influence of alcohol. He was convicted as to each count and sentenced to serve a sentence of three years on Count 1 and five years on Count 2 to run consecutively with Count 1. Defendant was to serve three years of the eight-year sentence in the state penitentiary. The sentence also stated that if he should be released earlier than the said three years, then the entire remainder of his sentence "shall be served on probation." Defendant's motion for new trial was denied, and he appeals. *Held:*

The defendant was indigent. Defendant's trial counsel was later appointed judge of the Superior Courts of the Tallapoosa Judicial Circuit. A member of his law firm was then appointed to prosecute this appeal, and this counsel thereafter filed defendant's motion for new trial which was denied.

The trial transcript notes that at the completion of the presentation of evidence by the state the reporter made the following comment: "[O]ne more witness, Don Martin, was called, but due to a fault in the court reporter's machine, his testimony was not recorded."[1]

---

[1] It is noted that this court, by order dated May 5,

The sole enumeration of error is that "[b]ecause of no fault of the Appellant, the transcript of evidence filed in this appeal by the State is incomplete resulting in an effective denial of Appellant's right to appeal." Hence the trial court erred in denying the motion for new trial. Counsel for defendant cites *Wade v. State,* 231 Ga. 131, 133 (1) (200 SE2d 271), which holds that when due to the loss of stenographic notes necessary for the preparation of a transcript, the transcript was not and cannot be filed because of such loss, this failure was not and is not the fault of the appellant (defendant). "To the contrary , it is the duty of the state to file the transcript after a guilty verdict has been returned in a felony case. Such is the law of this state . . .," and because the transcript of his trial is not available to him a new trial is required. See also *Parrott v. State,* 134 Ga. App. 160, 161 (2) (214 SE2d 3).

Defendant contends the testimony of the witness Don Martin was material since the state's case was based entirely upon the results of a blood alcohol test and since the case did not contain Martin's testimony "who was the lab technician that extracted the blood sample," placed it in a vial and delivered the sample to a state trooper, hence the record shows a failure of the state to comply with the law as required by Code Ann. § 68A-902.1(a, b) (Ga. L. 1974, pp. 633, 672), citing *Elliott v. Leavitt,* 122 Ga. App. 622, 627-628 (I 2) (178 SE2d 268), as to the foundation necessary to show the identity of the sample test and the chain of custody to render the report admissible as relevant evidence. Defendant contends that the absence of the testimony of Martin renders the blood alcohol test here completely inadmissible.

There was other testimony of a witness with reference to defendant's driving at the time of the collision, that after the collision he went to the automobile driven by the defendant and "stuck my head in there . . . I

---

1978, directed that "the omission be corrected by the parties, as promptly as possible, pursuant to the provisions of Code Ann. § 6-805 (f)." More than 60 days have now elapsed and thus we must assume that it is not possible to comply with that directive.

could smell alcohol. It was real strong. It was strong enough to knock you down." Corporal Elrod, a state patrolman of nearly fifteen years experience, and who had observed hundreds of persons under the influence of alcohol, testified there was strong odor of alcohol about defendant when they were removing him from the automobile and placing him in the ambulance, "[h]is speech was slurred," his eyes were glassy. He also testified there was "[t]he strong smell of alcohol in the car. There was [sic] two or three beer cans in there, and Mr. McElwee appeared to be in a very intoxicated condition." Thereafter, at the hospital probably an hour to an hour and fifteen minutes later his speech was still slurred and his eyes glassy and based upon his observation of intoxicated people, "[h]is condition appeared to be intoxication." The doctor at the hospital who gave emergency treatment to the defendant testified: "There was an odor on his breath very suggestive of an alcoholic beverage."

As to the chain of custody of the blood sample in response to direct examination by the assistant district attorney Corporal Elrod testified: "Q. Well, in your opinion, were these two people [the occupants of the 1974 Volkswagen] at that time deceased? A. Yes, sir. Q. After that, what did you do? A. I asked the medical examiner, according to Georgia law, to administer a blood test from them, as must be done in any accident involving a fatality. I then asked him to take a blood test from Mr. Floyd Dupree [one of the Volkswagen occupants] for a test for alcohol or carbon monoxide. Q. And did you obtain a blood sample? A. Yes sir. Q. And who did you obtain that from? A. The medical examiner took the blood. Q. Do you remember his name? A. No, sir, I don't. He was one of the doctors at Paulding Memorial Hospital. His name might have been Covington, if I'm not mistaken. I can't be sure about that. It might have been a Dr. Covington who took the blood. Q. Did you receive a vial from here? A. Yes, sir. Q. What did you do with it? A. I put it in the mail and mailed it to the crime lab in Atlanta."

Further, as to the chain of custody of the blood sample in response to direct examination by the assistant district attorney a supervisor employed by the State Crime

Laboratory in Atlanta testified: "Q. I call your attention to the 19th day of November of last year. Did you have occasion to receive a blood sample on that date from Officer Elrod? A. Yes, sir, I did. Q. Can you tell me when that was received by you? A. It came in through the mail and was received on November 19, 1976, at 8:30 into my office. Q. Okay. Did you personally receive that? A. Yes, sir, I did." The State Crime Laboratory supervisor further testified he then placed it in storage in a large walk-in type refrigerator and thereafter on the 22nd of November performed an analysis of the blood for alcoholic content which contained: "[e]thyl alcohol in the blood at the level of .19 grams percent."

We have diligently and carefully searched the record and transcript transmitted to this court and we are unable to find, with *any* degree of certainty, whose blood was transmitted to the State Crime Laboratory and whose blood it was that was examined at the State Crime Laboratory. The record and transcript is totally devoid of any evidence even as to how the blood transmitted and subsequently received at the State Crime Laboratory was labeled or otherwise identified.

Furthermore, relying upon the record and transcript transmitted to this court, as we must do, this appears to be a blood test, about which the crime laboratory supervisor testified, that could have been taken from one of the deceased persons since the testimony in regards to the blood taken by a Dr. Covington involved the blood of one of the decedents. Consequently, the chain of custody of blood from the defendant, if any was taken, has been broken, and therefore, the testimony as to the blood sample was inadmissible and irrelevant as to a trial of the defendant. The admission of testimony as to the blood sample constituted reversible error.

Both briefs referred to the witness whose testimony is missing as the laboratory technician who extracted the blood sample from the appellant. Accordingly, his testimony is vital to the state's case to show each link in the chain of custody of the blood sample. Without same, Corporal Elrod's testimony seemingly refers to a blood sample of someone else that he mailed to the crime laboratory for analysis. Accordingly, the failure of the

state to file a correct transcript effectively denies the defendant his right of appeal because a complete and correct transcript of his trial is not available to him. It is noted that proper objection was made to failure of the state to offer testimony as to the chain of custody of the blood sample. See *Parrott v. State,* 134 Ga. App. 160, 161 (2), supra; *Wade v. State,* 231 Ga. 131, 133 (1), supra. Compare *Lynch v. State,* 143 Ga. App. 188 (2) (238 SE2d 122).

*Judgment reversed. Quillian, P. J., and Webb, J., concur.*

SUBMITTED MAY 4, 1978 — DECIDED
SEPTEMBER 6, 1978.

*Foster & Vinson, W. A. Foster, III,* for appellant.
*John T. Perren, District Attorney, Robert W. Pitts, Assistant District Attorney,* for appellee.