A99A1903. PHILLIPS v. THE STATE.
(527 SE2d 604)

PHIPPS, Judge.

Phillips appeals his convictions of the rape, aggravated child molestation, and child molestation of his niece, K. P. Over hearsay objection, the trial court admitted testimony concerning out-of-court statements by K. P. and her sister, S. P., that were consistent with the testimony given by them. The trial court admitted the hearsay under *Gibbons v. State*[1] and *Cuzzort v. State*.[2] The hearsay testimony was, however, inadmissible under *Cuzzort* as clarified in *Woodard v. State*.[3] Although the out-of-court statements by the victim may have been admissible under the Child Hearsay Statute,[4] the improper admission of the hearsay statements of her sister in and of itself necessitates a reversal.

The indictment charged Phillips with committing various acts of rape and molestation between early 1990 and late 1993. The trial was held in 1997. K. P., born in 1981, was 16 years old at trial. S. P., born in 1983, was 13 years old.

In spring 1990, K. P. and S. P. began living with their paternal grandmother, Phillips's mother, because their mother had suffered a

---

[1] 248 Ga. 858, 862 (286 SE2d 717) (1982).
[2] 254 Ga. 745 (334 SE2d 661) (1985).
[3] 269 Ga. 317 (496 SE2d 896) (1998).
[4] OCGA § 24-3-16.

mental breakdown and was institutionalized for approximately five months. During that time, the paternal grandmother was appointed guardian for the children's mother. After her release, K. P., S. P., and their mother lived with the grandmother until June 1992.

According to the mother, in 1993, her daughters returned from a weekend visit with their grandmother, and S. P. informed her that Phillips, who lived in a trailer near the grandmother's house, had been hurting K. P. When confronted, K. P. confirmed what her sister had said.

K. P. testified that, beginning when she was about eight or nine years old, Phillips began molesting her by fondling and placing his mouth on her breasts and vagina, by having her fondle his penis, by placing his penis on her vagina and in her mouth, by digitally penetrating her vagina and attempting to force his penis into it, and by showing her pornographic videotapes and attempting to have her perform the acts depicted. K. P. testified that these incidents occurred at her grandmother's house and at Phillips's trailer and that, at times, her younger sister, S. P., was present. At trial, K. P. explained that she did not initially report the molestation to anyone because Phillips told her she would be blamed, but that she later admitted what had happened when confronted by her mother.

S. P. testified that she had observed Phillips do things to K. P. that made S. P. feel uncomfortable. S. P. specified that on one occasion, she observed Phillips pull down his pants when he and K. P. were alone in a room.

The Department of Family & Children Services investigator interviewed K. P. and S. P. during the 1993 school year. Over hearsay objection, she testified to statements the children made which were consistent with their trial testimony. The investigating police officer interviewed both children during the same time period. He too testified to out-of-court statements made by the children that were consistent with their testimony at trial. And he was allowed to compare each child's in-court testimony to her out-of-court testimony as he testified to the consistency of their statements.

A similar transaction witness, Phillips's first cousin, testified that, on an occasion when she was alone with Phillips at his mother's house, when she was approximately five years old, Phillips offered her money if she would place her mouth on his penis and then forced her to perform oral sex on him and fondle him after giving her drugs.

Phillips's mother and his former roommate testified that Phillips and K. P. had not been alone together. Phillips's stepfather testified that following a guardianship hearing in 1990, he overheard the children's mother say she would get even with the grandmother "even if she had to use the girls." K. P.'s former best friend testified that in 1994 she had heard K. P. say that the acts of molestation had never

occurred and that her mother was just trying to obtain money. A friend of K. P.'s family testified that in June 1995, K. P. confided to him that her mother had put her up to saying that she was molested and that it had not happened.

Although Phillips does not complain of the admission of the DFACS investigator's hearsay testimony, he does charge the trial court with error in overruling his hearsay objection to the investigating officer's testimony to out-of-court statements by the children.

*Gibbons* held that a prior *inconsistent* statement of a witness who testifies at trial and is subject to cross-examination is admissible as substantive evidence and not merely for impeachment purposes. *Cuzzort* extended the *Gibbons* rule to allow admission in evidence of a prior *consistent* statement of a witness who testifies and is subject to cross-examination at trial.

But in the key case of *Woodard v. State*, the Supreme Court of Georgia held that *Cuzzort* had been improperly construed (1) to permit admission of a witness's prior consistent statement regardless of whether the veracity of the witness had been challenged on cross-examination and (2) to eliminate the need for any inquiry into whether a prior consistent statement was offered solely for the purpose of bolstering a witness's credibility.[5] *Woodard* concluded that prior consistent statements are admissible only where (1) the veracity of a witness's trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination.[6]

Importantly, *Woodard* held that only if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination is a witness's veracity placed in issue so as to permit the introduction of a prior consistent statement. Even then, the prior consistent statement may be admitted as nonhearsay only if it was made before the motive or influence came into existence or before the time of the alleged recent fabrication. Otherwise, it is pure hearsay, which cannot be admitted merely to bolster the witness's credibility.

The charge here is that the mother improperly influenced the children because of her antagonism toward their grandmother after the grandmother was appointed her guardian. The mother's motive to exert the influence would have arisen at the time of the guardianship hearings in 1990. The children made the out-of-court statements to the investigating officer (as well as the DFACS investigator) in 1993. It thus does not appear that the extrajudicial statements of the

---

[5] Id. at 319, n. 14.
[6] Id. at 320.

children were made before the improper influence came into existence. Therefore, the hearsay testimony of the officer (and of the DFACS investigator) as to these statements was not admissible under *Cuzzort*.

Was such testimony admissible on other grounds? Under certain circumstances, the Child Hearsay Statute authorizes admission of hearsay statements of children in cases of sexual abuse.[7] Although this statute was not invoked in this case, it is arguable that testimony as to the out-of-court statements of the victim was admissible under this statute.[8] The same cannot, however, be said of the extrajudicial statements of her sister. This is so because that part of the statute authorizing admission of hearsay by child witnesses was held unconstitutional in *Woodard*.[9]

Does harmful error appear?

> "The test for harmful error is whether it is highly probable that the error contributed to the [verdict]. In determining whether hearsay testimony is harmful, this [c]ourt has found inadmissible hearsay which is received over objection does not require a new trial if it appears that the evidence could not have affected the verdict. . . ." [Cits.][10]

In deciding whether the testimony of the investigating officer could have affected the verdict, the first question we address concerns Phillips's failure to raise an appellate challenge to the admission of the DFACS investigator's testimony as to the children's out-of-court statements. Was any error in admission of the officer's testimony rendered harmless because it was cumulative of the testimony of the DFACS investigator? We must answer this question in the negative because there was an objection to the DFACS investigator's testimony at trial, the objection was meritorious, and the testimony was improperly admitted. Improper admission of hearsay evidence may be harmless only if it is cumulative of other "legally admissible" evidence of the same facts.[11]

Here, there was no physical evidence. The State's case turned on the credibility of testimony given by prosecution witnesses, primarily K. P. and S. P. The testimony of a number of defense witnesses raised serious questions as to the credibility of these children. The improper bolstering of their credibility with the hearsay testimony added criti-

---

[7] See OCGA § 24-3-16.

[8] See generally *Gregg v. State*, 201 Ga. App. 238, 240-241 (2) (b) (411 SE2d 65) (1991).

[9] 269 Ga. at 321-323 (3).

[10] *Wright v. State*, 226 Ga. App. 499, 500-501 (2) (486 SE2d 711) (1997).

[11] See *Carter v. State*, 238 Ga. App. 708, 711 (2) (520 SE2d 15) (1999).

cal weight to the State's case and did contribute to the verdict. Even if the officer's testimony as to the victim's out-of-court statements was admissible under the Child Hearsay Statute, the improper admission of the hearsay statements of her sister requires this case to be reversed.[12]

We need not address the remaining assertions of error, except to note that it is error for a trial court to admit similar transaction evidence without first conducting the admissibility hearing required by Uniform Superior Court Rule 31.3 (B).[13]

*Judgment reversed. Johnson, C. J., and McMurray, P. J., concur.*

DECIDED JANUARY 10, 2000.

*Christopher W. Duncan, Sean A. Black*, for appellant.
*Lydia J. Sartain, District Attorney, Scott A. Drake, Assistant District Attorney*, for appellee.

---

[12] See *Woodard,* supra at 324 (4).
[13] *White v. State*, 213 Ga. App. 429 (1) (445 SE2d 309) (1994).