546 S.E.2d 910 (2001)
248 Ga. App. 559
SUMMAGE
v.
The STATE.
No. A00A2529.
Court of Appeals of Georgia.
March 12, 2001.
*911 Steel Law Firm, Brian Steel, Alan J. Baverman, Atlanta, for appellant.
Patrick H. Head, District Attorney, Marsha S. Lake, Maria B. Golick, Assistant District Attorneys, for appellee.
PHIPPS, Judge.
Kerwin Summage was convicted of three counts of child molestation and one count of first degree cruelty to children. He appeals, claiming that the trial court erred by (1) allowing the jury to replay the victim's videotaped interview in the jury room, (2) admitting photographs and videotapes that did not depict the sexual activity with which he was charged, (3) allowing testimony that improperly commented on the victim's credibility, (4) improperly expanding the indictment in the jury charge on child molestation and (5) incorrectly instructing the jury that witnesses are presumed to speak the truth. Summage also claims that his trial counsel was ineffective for failing to object to certain testimony by State's witnesses. Because we find that the trial court improperly allowed the jury to replay the victim's videotaped interview in the jury room and that the error was not harmless, we reverse.
*912 Summage met C.M.'s mother in a nightclub in December 1996. They began dating, and several weeks later, Summage and his two-year-old daughter moved in with her, her two-year-old son and C.M., who was seven years old. Summage took care of both two-year-olds while C.M.'s mother was at work and C.M. was at school. On at least two occasions, Summage also looked after C.M. while her mother was at work.
C.M. testified that one night while her mother was at work, Summage showed her some photographs of "other children, other people ... posing with no clothes on." She said that Summage had a lot of photographs, but that she did not look at all of them. At trial, she identified three photographs as ones Summage had shown to her. C.M. testified that after Summage showed her the photographs, he told her to take off her underwear and get into two positionscrawling on her hands and knees and on her back with her legs open. She testified that he then took pictures of her with a Polaroid camera and showed them to her. He asked C.M. if he could touch her "on her private," but she said "no." C.M. testified that on another occasion, Summage told her to get on her hands and knees, rubbed "his private" on her "bottom" and "stuff came out," which she wiped off with a paper towel.
C.M.'s mother testified that several days after the last time Summage babysat for C.M., C.M. told her that he had been taking pictures of her in different poses without her panties. That night, C.M.'s mother took her to the emergency room of Scottish Rite Children's Hospital to be examined. Dr. Kelley examined C.M. and found her to be a "normal, pre-pubertal female." He testified that his examination would reveal only a violent and extremely painful injury and that children can be sexually abused in ways that would not show up in a medical examination. Dr. Kelley referred the matter to the Cobb County Police Department, and C.M.'s mother made an appointment to meet with Cobb County Police Detective Williams, who worked in the Crimes Against Children Unit.
Williams conducted a videotaped interview with C.M. Williams testified that C.M. stated the following during the interview: While Summage was babysitting C.M., he told her to remove her panties and pose for him. He then took pictures of her with a Polaroid camera. Summage showed her pictures of other children and people in the same poses he had asked her to assume. C.M. denied that Summage had given her a "bad touch," but said that he had put some type of "grease" on her. After Williams testified, the videotaped interview, which lasted about 45 minutes, was played for the jury.
After interviewing C.M., Williams obtained a warrant for Summage's arrest and a search warrant for his car. While executing the search warrant, Williams found a Polaroid camera, photographs and videotapes. The police also searched the apartment where Summage was then staying and confiscated a total of 25 videotapes, which were later reviewed by Williams. At trial, Williams identified 20 of 97 photographs found in Summage's car, all depicting naked women either on their hands and knees or on their backs with their legs open. He also identified 16 videotapes. Williams testified that nine of the videotapes involved males and females engaged in sexual activity and that some of those videotapes involved a young male, but the only indication as to his actual age came from Summage, who testified that he was twenty years old at the time the tape was made.
Williams referred C.M. to the Cobb County Children's Advocacy Center for counseling. From April 1997 to March 1998, licensed clinical social worker Karen Nash met with C.M. 21 times. During the fifth session, C.M. told Nash that Summage had taken pictures of her twice. C.M. also told her that the second time Summage took pictures of her, he had also taken off his pants and rubbed "his private part against her bottom" and that something came out of his "private part" that made her wet. Nash testified that C.M. was very upset that she had not told her mother and the detective about this incident earlier.
During trial testimony, Summage identified the Polaroid camera as his and admitted that he had taken the photographs previously identified. He also admitted that the videotapes belonged to him. He denied showing *913 the photographs to C.M. and denied taking pictures of her as she alleged or taking similar pictures of any other children. Summage also denied ever putting his penis on C.M.'s buttocks.
The indictment charged Summage with (1) telling C.M. to remove her panties and get into certain poses that would expose her vaginal area and buttocks so that he could take pictures of her in these poses, (2) showing C.M. photographs of females and males in sexually explicit poses, (3) rubbing his penis against C.M.'s body and buttocks and (4) causing C.M. excessive mental pain by engaging in these acts.[1]
1. Summage claims that the trial court erred by allowing the jury to replay C.M.'s videotaped interview in the jury room during its deliberations, in violation of the continuing witness rule.
The trial court has discretion to allow the jury to rehear recorded statements, if it is done in open court.[2] But here the trial court erred by allowing the videotaped statement to go to the jury room, over the objection of defense counsel.[3]
The question remains whether the error was harmful and requires a reversal and a new trial. The trial court did not caution the jurors not to place undue emphasis on the videotape or place any limits on the number of times or manner in which they should view it.[4] The jurors had access to the forty-five-minute tape, arguably the most important evidence introduced by the State, for more than five hours before they reached a verdict. The other evidence against Summage was not overwhelming,[5] and the jury was charged with determining whether he or C.M. was the more credible witness. Under the circumstances, we cannot say it is highly probable that allowing the victim's videotaped interview to go out with the jury did not contribute to the verdict.[6] We therefore reverse the judgment and order that a new trial be held.
2. Summage argues that the trial court's admission of the photographs and Williams's testimony about the content of the videotapes violated the rule set forth in Simpson v. State:[7]
In a prosecution for a sexual offense, evidence of sexual paraphernalia found in defendant's possession is inadmissible unless it shows defendant's lustful disposition toward the sexual activity with which he is charged or his bent of mind to engage in that activity.
Sexually explicit material cannot be admitted merely to show a defendant's interest in sexual activity; it must be linked to the crime charged.[8]
Here, the sexually explicit photographs and videotapes were offered for the purpose of showing that Summage often took pictures of naked women in certain positions, the same positions he asked C.M. to assume when he photographed her. Three of the photographs were specifically linked to the crime charged because C.M. identified them as photographs Summage had shown her.[9] Williams identified 20 additional photographs of naked females either on their hands and knees or on their backs, with their legs open, *914 as photographs he found in his search of Summage's car.
The additional photographs were admitted not for the purpose of showing Summage's lustful disposition in general,[10] but to show his disposition to photograph naked females in certain poses. Because Summage was specifically charged with taking these types of photographs of C.M., they were properly admitted.
We reach a different conclusion as to the videotapes depicting sexual activity. Although it does not appear that the videotapes were ever played for the jury, Williams was allowed to testify as to their content. There is no evidence that Summage ever filmed C.M. with a videocamera or that any of the videotapes depicting sexual activity involved children. Nor is there any evidence that C.M. knew about or viewed any of the videotapes. Because they did not depict the sexual activities with which Summage was charged and were not otherwise linked to the crimes charged, the videotapes depicting sexual activity were improperly admitted.[11]
Given our holding in Division 1, we need not determine if this error was harmful.
3. Summage claims that Williams's trial testimony improperly commented on C.M.'s credibility. He complains of the following testimony:
THE STATE: Normally, when a child discloses abuse, is it always at one time?
WILLIAMS: No.
THE STATE: Okay. What would be an example of something that they would disclose at another time?
WILLIAMS: Well, from my own experience, a case where I interviewed five boys. And this was after I'd interviewed a convicted child molester in the federal pen who had told me about molesting these boys. And he told me exactly in detail what he had done. I took that information. I went and interviewed the five boys.
Out of the five, only one made a disclosure at that time. The rest would not make disclosure at all. And they went into therapy for approximately a year. After that time, then they were able to come out and make a disclosure themselves. But this was after he had already told me exactly what he had done to the boys.
The court found Williams qualified as an expert witness based on his experience investigating crimes against children and his training in interviewing children. The disputed testimony illustrates Williams's experience that children are not always able to disclose abuse immediately after it happens and does not improperly address C.M.'s credibility.[12] Its admission was not erroneous.
4. Summage claims that the trial court improperly expanded the indictment by instructing the jurors on the statutory definition of child molestation, OCGA § 16-6-4, without specifically instructing them that Summage could be found guilty only if they determined the evidence showed he committed the offenses in the way and manner alleged in the indictment. He complains that the definition of child molestation includes "any immoral or indecent act" whereas the indictment charges him only with "an immoral and indecent act."
In addition to charging the jury on the statutory definition of child molestation, the trial court read to the jurors the indictment charging Summage with three separate counts of child molestation, instructed the jurors that the State bears the burden of proving the material elements of the indictment and instructed the jurors that they were authorized to find Summage guilty only if they determined beyond a reasonable doubt that he committed the offense as alleged in the indictment. Thus, the charge as a whole was correct and properly limited the jury's consideration of the child molestation *915 charges to the manner alleged in the indictment.[13]
5. Summage asserts that the trial court improperly instructed the jury that "[w]hen witnesses appear, they are presumed to speak the truth." Because such an instruction can be misleading, Georgia appellate courts have recommended against its use.[14] We strongly suggest that it not be used on retrial of this case.
6. Summage's remaining arguments relate to his claim of ineffective assistance of counsel. "[B]ecause the judgment is reversed and a new trial ordered, we find it unnecessary to address [Summage]'s allegations that trial counsel was ineffective."[15]
Judgment reversed and case remanded for new trial.
JOHNSON, P.J., and SMITH, P.J., concur.
NOTES
[1] An additional count of the indictment was dismissed at trial.
[2] Owens v. State, 248 Ga. 629, 631, 284 S.E.2d 408 (1981); see also Inglett v. State, 239 Ga.App. 524, 528(7), 521 S.E.2d 241 (1999) (court did not err by replaying videotape of crime scene to jurors after they had begun their deliberations).
[3] See Fields v. State, 266 Ga. 241, 243(2), 466 S.E.2d 202 (1996) (it is error to allow jury to take written or recorded statements into jury room during deliberations unless statements are consistent with defendant's theory of case).
[4] Compare Nixon v. State, 234 Ga.App. 797, 798-800(1), 507 S.E.2d 833 (1998).
[5] Compare Owens, 248 Ga. 629, 284 S.E.2d 408.
[6] See Johnson v. State, 238 Ga. 59, 61, 230 S.E.2d 869 (1976) (standard for reviewing nonconstitutional errors in criminal cases is highly probable test).
[7] 271 Ga. 772, 774(1), 523 S.E.2d 320 (1999).
[8] Id.
[9] Jowers v. State, 245 Ga.App. 773, 774(1), 538 S.E.2d 853 (2000).
[10] Compare Frazier v. State, 241 Ga.App. 125, 126(1), 524 S.E.2d 768 (1999).
[11] Id.
[12] See Odom v. State, 243 Ga.App. 227, 228(1), 531 S.E.2d 207 (2000) (expert opinion testimony that directly addresses the child's credibility is inadmissible, but the fact that such testimony indirectly though necessarily involves the child's credibility does not render it inadmissible).
[13] Bean v. State, 239 Ga.App. 106, 111(7), 521 S.E.2d 19 (1999).
[14] Noggle v. State, 256 Ga. 383, 385-386(4), 349 S.E.2d 175 (1986); Henson v. State, 205 Ga.App. 419, 420(3)(c), 422 S.E.2d 265 (1992).
[15] Slakman v. State, 272 Ga. 662, 671(6), 533 S.E.2d 383 (2000).