## A03A0182. SHIRLEY v. THE STATE.
(578 SE2d 163)

BLACKBURN, Presiding Judge.

Following his conviction for voluntary manslaughter, Perry Shirley appeals, arguing that the trial court erred in instructing the jury that it could infer the intent to kill from the use of a deadly weapon. Because we find the error to be harmless, we affirm.

Viewed in the light most favorable to the verdict, the evidence shows that, on February 26, 1999, Richard Pullins and Andre Bradley went to the second floor apartment of Angela Rome to visit, drink beer, and play cards. Also at the apartment were Rome's uncle, Lorenzo Fuller, and Brenda Simpson, who was visiting Fuller.

Pullins and Bradley were standing on the porch of the apartment when Shirley came up the steps and confronted Pullins about $5 that Pullins owed him. Pullins went into the apartment, trying to get some money from his pocket; Shirley followed, shoving Pullins and warning him that he "wasn't playing." Rome told the two men to get out of the apartment, and when Pullins and Shirley returned to the porch, Shirley began beating Pullins. Pullins, who was much smaller than Shirley, did not fight back but instead "balled up" in an effort to keep Shirley from hitting him in the face. After beating Pullins for several minutes, Shirley told Pullins that he was going to come back and "blast his ass" and then left.

Approximately two hours later, Pullins was alone on the porch, leaning on the bannister and looking down into the courtyard. At this point, Simpson, who was about to join Pullins on the porch, heard someone running up the steps. When she opened the door to see who it was, she saw Shirley standing behind Pullins, who was still lean-

ing on the wall. Shirley said, "I told you I was going to blast your ass." Pullins looked over his shoulder at Shirley and then returned his gaze to the courtyard. Shirley pulled out a pistol, fired into Pullins's back, and continued pulling the trigger even after the magazine was empty. Pullins slumped to the floor of the porch, and Shirley ran back down the stairs.

A medical examiner with the Georgia Bureau of Investigation testified that Pullins had seven entry wounds and five exit wounds. All of the entry wounds were the result of shots fired from behind Pullins.

The police recovered ten shell casings and three spent bullets from the scene, as well as two spent bullets from Pullins's body. The shell casings all came from the same weapon, a 9 mm Ruger semi-automatic pistol. Ballistics tests showed that all of the spent bullets had been fired from the same weapon.

On February 28, 1999, Shirley turned himself in at the Atlanta jail. After he was given his *Miranda* rights and signed a waiver of counsel form, Shirley gave a statement to the police in which he confessed that he had shot Pullins with his handgun, a 9 mm Ruger semi-automatic, after Pullins taunted him and threatened to kill him.

In a single enumeration of error, Shirley argues that the trial court erred when it instructed the jury as follows:

> Ladies and gentlemen, you may infer that a person of sound mind and discretion intends to accomplish the natural and probable consequences of that person's intentional act. And if a person of sound mind and discretion, intentionally and without justification, uses a deadly weapon or instrumentality in the manner in which the weapon or instrumentality is ordinarily used and thereby causes the death of a human being, you may infer the intent to kill. Whether or not you make any such inference is a matter solely within the discretion of the jury.

The charge given by the trial judge was a correct statement of the law at the time of Shirley's trial. However, in 2001, our Supreme Court, in *Harris v. State*,[1] changed the law in Georgia on this issue and held "that the giving of a 'use of a deadly weapon' charge is error, whether or not it is accompanied by an instruction that the jury has discretion to make the inference." Id. at 610 (2). As Justice Carley noted in his dissent in *Harris*, the majority did not explain why it found the "use of a deadly weapon" charge so egregious or "present

---

[1] *Harris v. State*, 273 Ga. 608 (543 SE2d 716) (2001).

any viable rationale" for this change in Georgia law. Nonetheless, we are bound by the holdings of the Supreme Court whether or not the rationale for the result is contained in the decision.

The *Harris* case specifically held that this new rule of criminal procedure is to "be applied to all cases in the 'pipeline' — i.e., cases which are pending on direct review or not yet final." Id. The present case falls into that category. Accordingly, we apply *Harris* in the present case and conclude that the trial court erred in giving the jury the "use of a deadly weapon" charge.

Under the *Harris* case, the use of this charge is reversible error where the evidence of malice is weak, and thus it cannot be said that it was highly improbable that the improper charge did not contribute to the jury's verdict.

The issue in this case is whether this instruction was harmful error requiring a reversal of Shirley's conviction and a new trial.

> "The standard for weighing nonconstitutional error in criminal cases is known as the 'highly probable test,' i.e., that it is 'highly probable that the error did not contribute to the judgment.' Under that test, a reversal is not required if the evidence of guilt is overwhelming in that there is no reasonable probability that the verdict of the jury would have been different in the absence of this error."

*Key v. State*.[2] Applying the holding in *Harris* to the facts of this case, we find that the evidence of malice was not weak and that it is highly probable that the error the trial judge committed in charging the jury did not contribute to the judgment. Id. Therefore, the error is harmless.

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

DECIDED FEBRUARY 6, 2003.

*Carl P. Greenberg*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney*, for appellee.

---

[2] *Key v. State*, 226 Ga. App. 240, 242 (1) (485 SE2d 804) (1997).