A05A1816. WARNER v. THE STATE.
(626 SE2d 620)

RUFFIN, Chief Judge.

Reginald Warner appeals his conviction for rape, alleging that the trial court committed the following errors: admitting the results of a blood test without a proper chain of custody having been established; allowing the victim to testify about her past sexual history; and failing to strike a juror who allegedly expressed bias. Because we agree that the trial court abused its discretion in admitting the results of a blood test without the proper foundation being laid, we reverse.

Viewed favorably to the jury's verdict,[1] the evidence shows that Warner is a cousin of the 19-year-old victim's stepfather. On May 20, 2003, he went to the victim's home, asked to use the telephone, and was admitted by her. After using the telephone, Warner raped the victim. She did not report the rape immediately; however, a few days after the rape, she felt a burning in her vaginal area and subsequently went to the emergency room. She learned that she was suffering from

---

[1] See *Weeks v. State*, 274 Ga. App. 122, 123 (616 SE2d 852) (2005).

a primary outbreak of herpes simplex type II,[2] which usually occurs between twenty-four hours and eight days after contact with an infected person. The victim had not previously been diagnosed with herpes.

At trial, there was testimony about several blood tests conducted by the State to determine whether Warner had herpes. On two occasions, Warner's blood was sent to the State laboratory, but was unable to be tested. On a third occasion, Warner's blood was successfully tested, and the test indicated that he had herpes simplex type II. Warner also arranged for blood tests to be performed by Quest Diagnostics on two other occasions, once on November 4, 2003, and once on November 17, 2003. The results of the first test were positive for herpes simplex type II, while the results of the second test were negative.

1. Warner contends that the trial court erred in admitting the results of the November 4, 2003 blood test because the State did not establish a chain of custody for the sample that was tested. On direct examination, Warner testified that he gave blood to be tested on November 17, 2003. Later, on cross-examination, Warner admitted that he also gave blood to be tested on November 4, 2003. Warner himself arranged for both tests; the prosecutor asserted that the State was unaware that Warner was being tested. Regarding the November 4 test, an employee of Quest Diagnostics testified that he tested a blood sample from Warner that was positive for herpes. The person who actually drew Warner's blood did not testify, and there was no testimony regarding the handling of the sample.

Warner argues that because there was no evidence presented about what happened to the November 4 sample after it was taken from him, the State failed to prove that it was actually his blood that was tested.[3] "[W]hen a blood sample is routinely handled and nothing in the record raises a suspicion that the blood tested was other than that taken from the defendant, the evidence of tests on such blood is admissible."[4] The evidence "need only establish reasonable assurance of the identity of the sample."[5] Here, Warner testified that his blood was taken, and the technician who analyzed it also testified. But there was no testimony at all about the handling of the November

---

[2] Herpes simplex type II is generally transmitted through sexual intercourse.

[3] In its brief, the State's only argument on this issue is that Warner waived his objection to the admissibility of the November 4 blood test by failing to object to the testimony of the person who performed the test. In light of the extensive argument before the trial court on this issue prior to the testimony, we find that Warner did not waive his objection.

[4] (Punctuation omitted.) *Cunningham v. State*, 255 Ga. 35, 38 (5) (334 SE2d 656) (1985).

[5] (Punctuation omitted.) *Johnson v. State*, 271 Ga. 375, 382 (13) (519 SE2d 221) (1999).

4 sample from the time it was taken to the time it was tested.[6] And the technician did not testify about how the sample was labeled or packaged or how he received it. Because there is no evidence that the sample was routinely handled, the State did not establish a reasonable assurance of its identity, and testimony as to the results of the November 4, 2003 blood test was therefore inadmissible.[7]

Reversible error occurs when there is a reasonable probability that the jury's verdict would have been different in the absence of the error.[8] In this case, there was no physical evidence of the rape itself and the jury was required to evaluate the credibility of the victim and Warner to determine if a rape took place. The State sought to prove the rape by establishing that Warner gave the victim herpes. Two tests of Warner's blood were admitted — one positive for herpes, one negative. There is a reasonable probability that evidence of a third test, which was positive, influenced the jury's determination that Warner had herpes and had raped the victim.[9] Under these circumstances, the trial court's admission of the testimony was reversible error.[10]

2. We will address Warner's second enumeration of error because it involves an issue that is likely to recur upon retrial of the case.[11] He argues that the trial court erred in permitting the victim to testify that, prior to the rape, she had not had sex for five months. Warner asserts that the admission of this testimony violated the rape shield law[12] and that the testimony was irrelevant to the issue of whether or not a rape had occurred. The State counters that the testimony was not introduced to demonstrate the victim's character, but rather as evidence that she had been raped by Warner since she could not have contracted herpes from anyone else.

The rape shield law excludes evidence of past sexual behavior of the alleged victim of a rape or other sex crime.[13] It is intended " 'to protect the complaining witness from intrusive inquiries into her history of sexual activity with persons other than the defendant, inquiries which could only be intended to support the inference that

---

[6] We note that the State learned of the November 4 test during the trial and sought a continuance in order to subpoena additional witnesses to testify as to the chain of custody.

[7] See *McElwee v. State*, 147 Ga. App. 84, 87 (248 SE2d 162) (1978).

[8] See *Shirley v. State*, 259 Ga. App. 503, 505 (578 SE2d 163) (2003); *Hayward v. State*, 258 Ga. App. 566, 568 (1) (b) (574 SE2d 646) (2002).

[9] See *Phillips v. State*, 241 Ga. App. 764, 766-768 (527 SE2d 604) (2000).

[10] See *Summage v. State*, 248 Ga. App. 559, 561 (1) (546 SE2d 910) (2001).

[11] See *St. Paul Fire &c. Ins. Co. v. Clark*, 255 Ga. App. 14, 24 (5) (b) (566 SE2d 2) (2002).

[12] See OCGA § 24-2-3.

[13] OCGA § 24-2-3 (a); see also *Rocha v. State*, 248 Ga. App. 53, 55 (2) (545 SE2d 173) (2001).

the victim consented to intercourse with the defendant.' "[14] Exceptions to the law have been made, however, when evidence of the victim's sexual activity is relevant to an issue other than consent.[15] We have held that a defendant may introduce evidence that the victim has a sexually transmitted disease, "not to prove that the victim had engaged in sexual intercourse with other men, but to exclude the possibility that *he* had had intercourse with her."[16] Likewise, the victim's testimony here was relevant to exclude the possibility that someone other than Warner had sexual contact with her and gave her herpes. It was not introduced to bolster the victim's character or show consent. Under these circumstances, the trial court did not abuse its discretion in admitting the victim's testimony.[17]

3. Because it is unlikely to recur upon retrial, we need not address Warner's claim that the trial court erred in failing to remove, for cause, a juror who expressed doubt about her impartiality.

*Judgment reversed. Johnson, P. J., and Barnes, J., concur.*

DECIDED JANUARY 30, 2006.

*August F. Siemon III*, for appellant.
*Peter J. Skandalakis*, District Attorney, *Raymond C. Mayer*, *Andrea A. Newton*, Assistant District Attorneys, for appellee.

---

[14] *Williams v. State*, 263 Ga. App. 597, 598-599 (1) (588 SE2d 790) (2003).

[15] See id. at 599.

[16] (Emphasis in original.) *Chambers v. State*, 205 Ga. App. 78, 79-80 (4) (421 SE2d 326) (1992); see also *Marion v. State*, 206 Ga. App. 159, 159-160 (1) (424 SE2d 838) (1992) (allowing testimony in child molestation case that victim had been previously molested by her father, because it was relevant to show other possible causes for her behavior and injuries); *White v. State*, 201 Ga. App. 53, 54-55 (1) (410 SE2d 441) (1991) (evidence that victim had several vaginal infections should have been admitted as relevant to whether rape occurred and whether defendant infected victim with venereal disease).

[17] See *Demetrios v. State*, 246 Ga. App. 506, 514 (7) (c) (541 SE2d 83) (2000) (rape shield law "cannot be invoked by a defendant to prevent a victim from offering otherwise relevant evidence").