### A08A1441. NGUYEN v. THE STATE.
(668 SE2d 514)

MIKELL, Judge.

Liem Nguyen was indicted for rape, incest, aggravated child molestation, and three counts of child molestation, based on acts committed against his stepdaughter, H. T. In 2004, a jury found him guilty of rape, incest, and two counts of child molestation, and not guilty of aggravated child molestation and one count of child molestation. The trial court sentenced Nguyen to ten years to serve. He was granted an out-of-time appeal in 2005. Appointed counsel moved for a new trial, which was denied. Nguyen appeals, asserting that the trial court abused its discretion in allowing the state to introduce the victim's videotaped interviews into evidence. Finding no error, we affirm.

On appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence. This Court

---

does not weigh the evidence or determine witness credibility, but only determines whether the evidence, viewed in the light most favorable to the jury's verdict, is sufficient under *Jackson v. Virginia.*[1] We uphold the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2]

So viewed, the record reflects that H. T., who was 17 years old at the time of trial, testified that she was born in Vietnam on December 31, 1986, and lived there with her mother and Nguyen, her stepfather, until 1996, when the family immigrated to the United States and moved to Clarkston. H. T. testified that Nguyen tried to molest her even before they moved from Vietnam, but she was able to get away from him. Nguyen began to overpower H. T. when she was 12 or 13 years old. Despite her protests, Nguyen removed H. T.'s clothing and put his hands on her chest and her "private place." When he molested her, her mother was at work and her younger siblings were either asleep or out of the house. According to H. T., Nguyen also put his mouth on her "private part," which she identified as her vagina, and put his penis inside of her. He put his hand over her mouth so that she would not scream. He raped her "a few times" over a period of a year, and she testified that she told her friends and a school counselor. After reporting Nguyen, H. T. was sent to live in foster care. H. T. also testified that before talking to the police, she ran away from home for three days to get away from Nguyen. H. T. testified that she wanted to live with her mother, but her mother would not leave Nguyen. This made H. T. upset and angry.

On cross-examination, H. T. testified that, at the time of trial, she was in the Department of Family and Children Services' (DFCS) custody and had lived in foster care for four years, but her mother visited her in the foster home only during the first year. H. T. also testified that once when she was allowed to visit her mother's apartment, Nguyen showed up, so H. T. was not permitted to visit there again. H. T. further testified that she had not seen her mother for three years, until September 2004, one month before trial. During a visit, DFCS told her mother that if she left Nguyen, H. T. could return to live with her mother, but her mother refused to leave. H. T. testified that she was present during this discussion.

Houng Tran, H. T.'s mother, testified through an interpreter that she is married to Nguyen and that they have three children. When asked if she had ever seen Nguyen do anything wrong with

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[2] (Punctuation and footnote omitted.) *Moore v. State*, 291 Ga. App. 270-271 (661 SE2d 868) (2008).

H. T., Tran replied that she had seen them "asleep together" with their clothes on in the living room. Tran explained that H. T. and Nguyen slept in the living room and that she slept by herself in the bedroom. Tran never saw Nguyen touch H. T. inappropriately, but Nguyen told Tran to lie and not to say that he raped H. T. Nguyen told Tran that if she did not lie in court, he would "take the kids away." Tran also testified that she wants to live with her children, not her husband.

Dr. Danielle Levy, the program manager of the DeKalb office of the Georgia Center for Children, testified that she interviewed H. T. two times and that both interviews were videotaped. During the first interview, in March 2001, H. T. was reluctant to talk, extremely quiet, tearful, and mostly unresponsive. According to Dr. Levy, H. T. told her that Nguyen "did something that he wasn't supposed to, that her mom knew it, and that if she went back home it was going to happen again." Dr. Levy testified that children often do not report acts of sexual abuse for a variety of reasons and that she was not surprised by H. T.'s reluctance to talk given the circumstances. During the second interview, on February 13, 2004, H. T. told Dr. Levy that Nguyen raped her; that he attempted to force her to perform oral sodomy, but she refused; and that she told her mom, who told him to stop, but did not do anything about it. Both videotapes were played for the jury. During cross-examination, Dr. Levy testified that she was unaware that just before the second interview, H. T. had falsified a credit card and charged over $200 to her foster mother's phone bill and that her DFCS social worker had told her that everything would be forgiven if she "talked."

Dr. Joann Benford, the guidance counselor at H. T.'s middle school, testified that H. T. told her that she ran away from home because Nguyen was having sex with her and that the abuse began when she was nine years old and living in Vietnam.

During recross-examination, H. T. admitted that her foster mother was upset about the unauthorized credit card charges and that her DFCS social worker talked to her about the incident and asked, "are you ready to talk to us now?" Following this discussion, H. T. returned to the Georgia Center for Children for the second interview with Dr. Levy. Regarding details of the abuse, the following colloquy took place between defense counsel and H. T. during recross-examination:

Q: I believe you were asked in one of the tapes if anything ever came out of [Nguyen's] penis; is that correct? Do you know what I'm talking about?
A: Yeah.
Q: Did there? Was there?
A: Yes.

Q: Do you remember being asked that by Dr. Levy?
A: Yes.
Q: And you said nothing came out. Do you remember that?
A: Yes.
Q: And you're changing your testimony here today; is that correct?
A: No.
Q: No?
A: (Witness shakes head negatively.)
Q: Why didn't you tell her that?
A: I don't know.

Relying on *Woodard v. State*,[3] and *Baugh v. State*,[4] Nguyen contends that the trial court erred in admitting the videotaped interviews of H. T. into evidence as prior consistent statements.[5] According to *Woodard*, a witness's prior consistent statement may be admitted only if three conditions are met: "(1) the veracity of a witness's trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination."[6] In that case, our Supreme Court found unconstitutional the portion of the Child Hearsay Statute, OCGA § 24-3-16, that permits the introduction of the hearsay statements of a child who *witnessed* the alleged child abuse.[7] Applying *Woodard*, the Supreme Court held in *Baugh* that the trial court erred in allowing the lead detective to testify to the contents of the out-of-court statements of four state's witnesses whose veracity had not been placed in issue during cross-examination.[8]

The rule that has evolved from *Woodard* is that

only if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination is a witness's veracity placed in issue so as to permit the introduction of a prior consistent statement. Even then, the prior consistent statement may be admitted as nonhearsay only if it was made before the motive or influence came into existence or before the time of the

---

[3] 269 Ga. 317 (496 SE2d 896) (1998).

[4] 276 Ga. 736, 738 (2) (585 SE2d 616) (2003).

[5] H. T. was three months over the age of fourteen when she gave the interview, so the Child Hearsay Statute, OCGA § 24-3-16, did not apply. See *Currington v. State*, 270 Ga. App. 381, 387 (4) (606 SE2d 619) (2004).

[6] (Footnote omitted.) *Woodard*, supra at 320 (2).

[7] Id. at 321-323 (3).

[8] *Baugh*, supra at 738-739 (2).

alleged recent fabrication. Otherwise, it is pure hearsay, which cannot be admitted merely to bolster the witness's credibility.[9]

Thus, to counter an allegation that a witness is motivated or has been influenced to testify falsely or that her testimony is a recent fabrication, "evidence is admissible that [she] told the same story before the motive or influence came into existence or before the time of the alleged recent fabrication. In those circumstances, the prior consistent statement is defined as not hearsay and thus is admitted into evidence."[10]

Here, H. T. testified and was cross-examined by defense counsel. According to Nguyen, however, H. T.'s veracity was never placed in issue during cross-examination. We do not agree. As recounted above, during recross-examination, Nguyen's counsel questioned H. T. about a key difference between her testimony at trial and her statements to Dr. Levy. Thus, we find that defense counsel's questioning placed H. T.'s veracity at issue, by implying that she had changed her story for trial.[11] It is insignificant that the tapes were introduced before Nguyen's counsel conducted recross-examination. In *Sterling v. State*,[12] the defendant alleged that the trial court erred by admitting into evidence the victim's statement to the police during a police officer's testimony because the victim had not yet testified and the tape merely bolstered her subsequent testimony.[13] Our Supreme Court pointed out the risks of introducing such evidence before a witness's credibility is attacked, but affirmed the trial court, finding that the *Woodard* factors had been satisfied: (1) the audiotape was consistent with the victim's trial testimony; (2) the victim subsequently testified; and (3) her credibility was eventually attacked.[14]

Secondly, as pointed out by the state, defense counsel implied during cross-examination that H. T. had recently fabricated her trial testimony in order to reunite with her mother. The second videotape was made on February 13, 2004, and the case was tried from

---

[9] *Phillips v. State*, 241 Ga. App. 764, 766 (527 SE2d 604) (2000). See also *Tuff v. State*, 278 Ga. 91, 94 (4) (597 SE2d 328) (2004).

[10] (Punctuation, footnote and emphasis omitted.) *Woodard*, supra at 320 (2).

[11] See, e.g., *Brown v. State*, 287 Ga. App. 857, 859-860 (3) (652 SE2d 807) (2007) (victim's veracity placed in issue during cross-examination when defense counsel questioned her uncertainty as to her age, and when molestation began); *Joines v. State*, 264 Ga. App. 558, 561-562 (3) (a) (591 SE2d 454) (2003) (point of cross-examination was that victim fabricated dates). See also *Johnson v. State*, 241 Ga. App. 448, 451 (3) (526 SE2d 903) (1999) (a witness's veracity may be placed in issue expressly or impliedly).

[12] 267 Ga. 209 (477 SE2d 807) (1996).

[13] Id. at 213 (9).

[14] Id. See also *Jackson v. State*, 271 Ga. App. 278, 282 (2) (609 SE2d 207) (2005).

September 27 through October 1, 2004. Defense counsel specifically elicited testimony from H. T. that she had not seen her mother for three years, until one month before trial; that she was present when her DFCS social worker told her mother that she would have to leave Nguyen before H. T. could return to the home; and that her mother said she would not leave Nguyen. The point of this questioning was to suggest that H. T. had fabricated her story in order to reunite with her mother and siblings. H. T.'s videotaped statements — made prior to the September 2004 visit with her mother and social worker — were admissible to rebut this implication.[15]

Additionally, the first videotape, made in 2001, was admissible for another reason. During recross-examination, defense counsel questioned H. T. about the unauthorized credit card charges. H. T. admitted the charges and testified that shortly after her DFCS social worker discussed the matter with her, she agreed to return for a second interview at the Georgia Center for Children. This questioning at the very least implied that H. T.'s testimony was motivated by a desire to please her DFCS social worker and avoid criminal prosecution for the unauthorized credit card charges. The 2001 videotaped interview, therefore, was admissible to rebut this implication. For these reasons, the trial court did not err in admitting the videotaped interviews.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED OCTOBER 16, 2008.

*Little & Crumly, Samuel F. Little, Jr.*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Daniel J. Quinn, Assistant District Attorney*, for appellee.

---

[15] Compare *Forde v. State*, 289 Ga. App. 805, 808 (1) (658 SE2d 410) (2008) (statements contained in videotaped interview were made well after the alleged improper motive came into existence, and, therefore, was inadmissible hearsay).