## A08A0287. DICKERSON v. THE STATE.
(666 SE2d 43)

PHIPPS, Judge.

John Dickerson appeals his convictions on two counts of armed robbery and one count of possession of a firearm during the commission of a felony. Dickerson was 15 years old at the time the crimes were committed and 16 years old at trial. He charges the trial court with error in its admission of two un-redacted audio/video DVDs showing conversations that occurred between himself and his mother in a police station interview room and were recorded without his knowledge. Finding no error in the court's admission of the DVDs, we affirm.

Evidence showed that Dickerson lived with his mother and siblings. A Pizza Hut restaurant and a Papa John's pizza restaurant were located near their residence. Dickerson was convicted of the armed robberies of a Pizza Hut deliveryman on February 12, 2006, and of a Papa John's deliveryman three days later. The deliverymen were robbed at gunpoint by two young black males when responding to telephone orders for pizza deliveries to unoccupied residences near Dickerson's home. The telephone number used to place the Pizza Hut order was traced to a cell phone registered to Dickerson's mother and being used by him at the time of the robberies. That telephone number was the same number provided by the person who placed the Papa John's order. Shortly after the Papa John's deliveryman was robbed, a police officer observed Dickerson in the vicinity of the robbery. The officer approached and questioned Dickerson because he was acting suspiciously and fit descriptions as to race, gender, age, and/or clothing provided for the robbers. Dickerson was arrested after the officer determined that the number of the cell phone in his possession was connected to both robberies. Based in part on distinctive markings in his eyebrows, Dickerson was positively identified by both pizza deliverymen prior to trial. They also positively identified him at trial.

Immediately after his arrest, Dickerson was transported to the Gwinnett County police station and seated in an interview room monitored by a concealed camera. Events that took place in the room were recorded by the camera on two DVDs and later played to the jury. The first shows the initial questioning of Dickerson by a police detective. At the outset, the detective informed Dickerson of his *Miranda* rights, told him that he could have a parent there during questioning, and asked whether Dickerson wanted to talk to him. Dickerson responded that he wanted to talk to his mother and that he wanted her there so that she could tell the detective where he had been. The detective agreed and left Dickerson alone in the room. Dickerson then made a number of calls on his cell phone. One was to

his mother. During that call, he told her that the Papa John's robbery had been committed by two acquaintances to whom he had given the cell phone and that he had been at home at the time in question. The second DVD shows Dickerson's mother coming into the interview room and berating him for leaving the house with chores undone and for allowing himself to get into trouble by letting others use the cell phone she had provided him.

At the beginning of the trial, defense counsel moved in limine to exclude those portions of the second DVD showing the exchange between Dickerson and his mother on the ground that their conversation was more prejudicial to the defense than probative to the prosecution's case. The prosecutor responded that the conversation between Dickerson and his mother was highly relevant because it showed that, rather than being at home at the time in question, he had left the house without doing his chores. The trial court expressed concern about the "concept of taping a private conversation" between parent and child but deferred ruling on the defense motion. After consideration of authorities subsequently cited by the prosecution, the court ruled that the two DVDs, including the conversation between Dickerson and his mother, could be played to the jury.

1. There is no merit in Dickerson's argument that admission of the first DVD infringed upon his right to have his mother present during questioning by the police.

Although the juvenile code requires a person taking a child into custody to promptly give notice to a parent, guardian, or other custodian,[1] there is no provision requiring a parent to be present during questioning.[2] It has thus been "consistently held that the custodial statement of a juvenile is not rendered inadmissible merely because it was made in the absence of a parent."[3] Instead, whether the juvenile is held incommunicado or allowed to consult with a parent is a factor in determining whether the statement was voluntarily and knowingly given.[4]

2. The court did not err in concluding that, under the circumstances present here, Dickerson had no reasonable expectation of privacy in the conversation with his mother.

The lead case on this issue is *Lanza v. New York*,[5] where the Supreme Court of the United States addressed a Fourth Amendment challenge to the interception of a conversation between a prisoner and visitor by means of an electronic device installed in the visitor's

---

[1] OCGA § 15-11-47 (c).

[2] *Marshall v. State*, 248 Ga. 227, 228 (2) (282 SE2d 301) (1981).

[3] *Murray v. State*, 276 Ga. 396, 398 (3) (578 SE2d 853) (2003) (citations omitted).

[4] Id. at 397 (2).

[5] 370 U. S. 139 (82 SC 1218, 8 LE2d 384) (1962).

room at a jail. The *Lanza* court concluded that Fourth Amendment protections do not extend to jails, noting that jails share none of the attributes of privacy of homes, offices, automobiles, or hotel rooms and that, "[i]n prison, official surveillance has traditionally been the order of the day."[6] *Lanza* was careful to note, however, that, even in a jail, "the relationships which the law has endowed with particularized confidentiality must continue to receive unceasing protection," although there was no claimed violation of any such relationship there.[7]

In *Katz v. United States*,[8] the Supreme Court later rejected the "protected areas" analysis employed in *Lanza*. In *Katz*, of course, the Court issued its well-known proclamation that "the Fourth Amendment protects people, not places."[9] The *Katz* test embraces "a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.' "[10] Even though *Katz* thus called into question the continued viability of *Lanza*, post-*Katz* decisions have consistently followed *Lanza* and held that federal law permits the admission in evidence of monitored conversations in places such as jails, police cars, and police stations.[11]

Thus, in *United States v. Hearst*,[12] the Ninth Circuit Court of Appeals held that a pretrial detainee incarcerated in a county jail had no reasonable expectation of privacy in a conversation with a visitor, because the government had adequately established that its practice of monitoring and recording such conversations was a reasonable means of maintaining jail security.[13]

In *Donaldson v. Superior Court*,[14] the Supreme Court of California upheld the denial of a defendant's motion to suppress evidence obtained when police recorded a conversation between him and his brother in a police station interview room, finding that the case presented a question of federal law resolved against the defendant by *Lanza* post-*Katz*.

---

[6] Id. at 143 (footnote omitted).
[7] Id. at 144 (footnote omitted).
[8] 389 U. S. 347 (88 SC 507, 19 LE2d 576) (1967).
[9] Id. at 351.
[10] Id. at 361 (Harlan, J., concurring).
[11] See *United States v. Hearst*, 563 F2d 1331, 1345 (9th Cir. 1978); *Belmer v. Commonwealth*, 553 SE2d 123, 127-128 (Va. App. 2001); *Ahmad A. v. Superior Court*, 263 Cal. Rptr. 747, 751-752 (Cal. App. 1989); *Donaldson v. Superior Court*, 672 P2d 110, 112-113 (Cal. 1983).
[12] Supra.
[13] 563 F2d at 1344-1346.
[14] Supra.

In *Ahmad A. v. Superior Court*,[15] the Court of Appeals of California was presented with a case much like this one. There, a minor claimed that the surreptitious tape recording of his conversation with his mother in a police interrogation room violated his reasonable expectation of privacy under the Fourth Amendment. *Ahmad A.* held that this claim could not surmount *Lanza*.[16] As to whether the minor had a subjective expectation of privacy, the court noted that although the officer had left the minor in the interrogation room alone with his mother after closing the door, no representations or inquiries were made as to privacy or confidentiality.[17] Moreover, the court observed that any such belief would not have been objectively reasonable in a police station because "in the jailhouse the age-old truism still obtains: 'Walls have ears.' "[18] And as also noted by *Ahmad A.*, California does not recognize a parent-child privilege of confidentiality.[19]

In the more recent case of *Belmer v. Commonwealth*,[20] the Virginia Court of Appeals held that even a whispered conversation between a mother, stepfather, and child who had been left alone in a police station interview room did not have Fourth Amendment protection.[21] The court noted that the police were conducting a criminal investigation, that the defendant knew he was the subject of the investigation, that the investigating detective had done nothing to lull the defendant into believing that his conversation would be private, that the defendant thus had no reason to believe that the interrogation room was a sanctuary for privileged discussions, and that simply leaving a suspect alone with another individual while in police custody does not create an expectation of privacy that society is prepared to recognize as reasonable.

Although no Georgia case is directly on point, two are instructive. In *Meyer v. State*,[22] a police officer was permitted to testify as to an incriminating statement he claimed to have overheard the defendant make in a telephone call to her parents from the reception area of a police station. Because the call was made from a public room with police personnel within her immediate vicinity, and based on the absence of a request for more private accommodations, this

---

[15] Supra.

[16] 263 Cal. Rptr. at 751.

[17] Id. at 750-751.

[18] Id. at 752 (footnote omitted).

[19] Id. at 752, n. 5. Similarly, parent-child communications are not privileged in Georgia either. See OCGA § 24-9-20 et seq.

[20] Supra.

[21] 553 SE2d at 126-129.

[22] 150 Ga. App. 613 (258 SE2d 217) (1979).

court distinguished *Katz* and found that the defendant had no reasonable expectation that her conversation would be private.[23] In *Burgeson v. State*,[24] a hidden tape recording device captured a conversation between arrestees placed in the back of a patrol car. Guided by the decision of the Eleventh Circuit Court of Appeals in *United States v. McKinnon*,[25] our Supreme Court in *Burgeson* concluded that in a police car, much like a jail cell, there exists no reasonable expectation of privacy.[26]

Under the reasoning employed in the foregoing cases, it is questionable whether Dickerson had an objectively reasonable expectation of privacy in the conversation with his mother. It is unnecessary, however, to decide that question because, under the facts of this case, no subjective expectation of privacy was exhibited. In this case, as in *Ahmad A.*, although the officer left the minor in the interrogation room alone with his mother, no representations or inquiries were made as to privacy or confidentiality. Moreover, the prosecution states without contradiction that police officers' entry into the room while Dickerson and his mother conversed did not cause them to cease talking or lower their voices. Therefore, unlike in *Belmer*, neither Dickerson nor his mother attempted to make the conversation private. In fact, Dickerson had said that he wanted the detective to hear his mother's account of his whereabouts. And as in *Belmer*, as well as *Meyer* and *Burgeson*, Dickerson had been arrested for crimes under investigation and put in a place containing no guarantees that communications taking place therein would remain confidential. We thus find no merit in Dickerson's claim that the police violated his expectation of privacy in his conversation with his mother.

3. Nor do we find merit in Dickerson's claim that the prejudicial effect of his conversation outweighed its probative value.

Essentially, Dickerson argues that his mother's tirade prejudiced him in the eyes of the jury because in the DVD she appears to believe he is guilty. From our review of the DVD, however, on balance she appears incensed with him for other reasons, e.g., because he disobeyed her by leaving the house without doing his chores, and he allowed himself to get in trouble by letting others use the cell phone she had provided for him. Moreover, various of the statements he made to his mother were exculpatory and consistent with his defense. For these reasons, admission of the taped conversation

---

[23] Id. at 614-615 (2) (A).
[24] 267 Ga. 102 (475 SE2d 580) (1996).
[25] 985 F2d 525 (11th Cir. 1993).
[26] 267 Ga. at 106-107 (3) (d).

between Dickerson and his mother was not unfairly prejudicial to his defense. And, contrary to argument advanced by Dickerson, the conversation added significant weight to the state's proof that Dickerson had the opportunity to commit the robbery that day and thus was not merely cumulative of other evidence. Under these circumstances, we find no abuse of discretion in the trial court's determination that the probative value of the evidence outweighed its prejudicial effect.[27]

*Judgment affirmed. Johnson, P. J., concurs. Barnes, C. J., concurs specially.*

BARNES, Chief Judge, concurring specially.

I write separately to express my disagreement with the majority's conclusion that the police officer's DVD recording of Dickerson's conversations with his mother was properly admitted in evidence. Thus, I can only concur in the judgment of the majority opinion.

1. Dickerson's status as a juvenile mandates the involvement of his mother in his questioning. OCGA § 15-11-47 (c).[28] In these circumstances, the police should not be allowed, through the use of a hidden video camera and without notice to the juvenile or his parent, to secretly invade the privacy of the parent-child encounter which our law authorizes and makes an integral part of the interview with a juvenile suspect.

Although I recognize that the majority has correctly analyzed the general precedents involving jail house interrogations, conversations on public telephones, and the like, I do not find these precedents controlling in this case because the parent's involvement is mandated by OCGA § 15-11-47 (c). Indeed, one of the criteria which must be considered before a juvenile's statement is admissible in this State is "[w]hether the accused is held incommunicado or allowed to consult with relatives, friends or an attorney." (Emphasis omitted.) *Marshall v. State*, 248 Ga. 227, 230 (3) (282 SE2d 301) (1981); *Riley v. State*, 237 Ga. 124, 128 (226 SE2d 922) (1976). Consultation with a parent is meaningless if the police may surreptitiously record the conversation between the parent and child and the prosecutor may then play the recording to the jury. Therefore, just as we would not

---

[27] See generally *Hicks v. State*, 256 Ga. 715, 721 (13) (352 SE2d 762) (1987) (considerations as to whether prejudicial effect of evidence is outweighed by its probative value are appropriately committed to trial court's discretion).

[28] *Notice; temporary detention or questioning.* The person taking a child into custody shall promptly give notice thereof, together with a statement of the reason for taking the child into custody, to a parent, guardian, or other custodian and to the court. Any temporary detention or questioning of the child necessary to comply with this Code section shall conform to the procedures and conditions prescribed by this article and rules of court.

countenance the recording of a conversation between a defendant and his attorney, we should not permit the recording of a conversation between a juvenile defendant and his parent in this context.

2. Reversal is not required in this case, however, because any error in admitting the recordings in evidence was clearly harmless. "This court has recognized the general rule that in order to justify a new trial or reversal, the trial court's ruling must be both erroneous and harmful to the appellant. The test for harmful error is whether it is highly probable that the error contributed to the judgment." (Citations and punctuation omitted.) *Wright v. State*, 226 Ga. App. 499, 500 (2) (486 SE2d 711) (1997); *Phillips v. State*, 241 Ga. App. 764, 767 (527 SE2d 604) (2000). In this instance, even though it is doubtful that the recording had any probative value, the contents of the recording, in fact, were not incriminating or legally prejudicial. This is underscored by the comments of Dickerson's counsel that he did not want the DVD played, but if it were to be played, he wanted it played in its entirety. He further stated:

> I anticipate, Judge, when the prosecutor rests and it's time for me to go, I'm going to start with my client's mother. So it's not — this is not a big fight for me because I think the entirety of the DVD is going to be played whether it's played before the prosecution rests or before I rest. It's going to be played, so I'm not going to make a big deal out of stopping and starting.

Further, Dickerson's appellate counsel acknowledged that the content of the recording was "redundant of more reliable sources properly admitted." Under these circumstances, it is highly probable that the error did not contribute to the judgment. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976); *Palmer v. State*, 186 Ga. App. 892, 897 (3) (369 SE2d 38) (1988).

Therefore, even though the trial court erred by admitting the recording of Dickerson's consultation with his mother, this error was harmless because it did not contribute to Dickerson's convictions.

DECIDED JUNE 25, 2008 —
RECONSIDERATION DENIED JULY 17, 2008

*Sharon L. Hopkins*, for appellant.

*Daniel J. Porter, District Attorney*, for appellee.