**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**MCMILLIAN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 25, 2019**

# In the Court of Appeals of Georgia

A19A0433. WILSON v. THE STATE.

Goss, Judge.

After a jury trial, Appellant David Wilson was convicted of one count of aggravated assault, family violence (OCGA § 16-5-21 (j))[1] and one count of misdemeanor escape (OCGA § 16-10-52). Appellant appeals from the denial of his motion for new trial, arguing that the trial court erred in allowing the State to introduce a recorded telephone conversation conducted by the victim while she was alone in a police interview room because the recording violated Georgia's Eavesdropping Statute, OCGA § 16-11-62. He also argues that the trial court erred

---

[1] The former version of OCGA § 16-5-21 (j) applies in this case. See Laws 2011, Act 245, §16, effective May 13, 2011.

in admitting the recorded telephone conversation because it contained impermissible character evidence. For the following reasons, we affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt under the standard of *Jackson v. Virginia*, 443 U. S. 307, 99 SCt 2781, 61 LE2d 560 (1979).

(citation and punctuation omitted.) *Driggers v. State*, 291 Ga. App. 841, 841 (662 SE2d 872) (2008).

So viewed, the evidence produced at trial shows that on May 15, 2013, Jessica Wilson, the victim and wife of Appellant, was driving in a car with Appellant and her two children. An argument occurred between Appellant and Wilson, and they pulled the car over at a gas station. Wilson exited the car and would not return to it despite Appellant's demands that she do so and take him to his mother's house. Shaniqua Harris, a clerk at the gas station, watched the altercation while she was standing outside on a smoke break. Harris testified at trial that Wilson "looked pretty scared" and "didn't want to go in that car with him." Harris testified that Appellant then exited the car and that another verbal altercation erupted between the two before

2

Appellant returned to his car, retrieved a kitchen steak knife, and stabbed Wilson in the thigh. Harris explained that Wilson screamed, "[y]ou stabbed me," and Appellant fled the scene in his vehicle with her two children still in the backseat. Harris observed Wilson pull the knife out of her leg and toss it into a garbage can. Harris identified the knife at trial. Harris recounted that she told Wilson to come into the gas station so she could call the police, but Wilson refused. The gas station manager called 911, and police responded to the scene.

Later that afternoon, Wilson agreed to waive her *Miranda* rights and speak with police officers. Wilson was interviewed by Detective Manley in an interview room at the police station. The interview was videotaped. During the police interview, Wilson told Detective Manley that Appellant had unintentionally stabbed her in the leg with a "metal comb thing" that was in his pocket, and that she had retrieved the knife from the car and thrown it in the trash can herself.

After questioning Wilson, Detective Manley left the room explaining, "I'll be right back then." He did not state that the interview was over. Wilson then made phone calls to undisclosed recipients. Her side of these phone conversations were captured on the video recording and played for the jury. During one of these

conversations, Wilson discussed her marriage to Appellant, her frustrations with him, and his desire to sell drugs.

The recorded interview and Wilson's subsequent telephone conversations were introduced as State's Exhibit 23. Appellant objected to the portion of Exhibit 23 that contained Wilson's phone conversations on the basis that the substance of her statements contained highly prejudicial character evidence relating to Appellant which was not admissible for any purpose under OCGA § 24-4-404. The trial court overruled the objection. Immediately prior to the State's introduction of Exhibit 23, Appellant further objected to the admission of that portion of Exhibit 23 on the basis that the telephone conversation was inadmissible pursuant to Georgia's Eavesdropping Statute, OCGA § 16-11-67. The trial court overruled the objection.

The State heard expert testimony from Rose Grant Robinson about the contradictory behavior of domestic violence victims, as well as evidence of several prior difficulties between Wilson and Appellant wherein Appellant had previously beaten her with a crowbar, a curtain rod, and had punched her in the face in front of his parole officer.

4

1. Appellant argues that the trial court erred in allowing the State to introduce the portion of Exhibit 23 which recorded a phone call Wilson made after being left alone in the police interview room. Appellant argues that this recording violates Georgia's Eavesdropping Statute, OCGA § 16-11-62.[2] Pretermitting the issue of whether Appellant has standing to contest the admission of Exhibit 23,[3] we find that the trial court did not err in overruling Appellant's objection because Wilson did not have an expectation of privacy at the time the call was made.

Georgia's Eavesdropping Statute provides that "[n]o evidence obtained in a manner which violates any of the provisions of [the Eavesdropping Statute] shall be admissible in any [Georgia] court[.]" OCGA § 16-11-67. Our Supreme Court has held that this prohibition includes the use of a recording for impeachment purposes. *Ransom v. Ransom*, 253 Ga. 656, 658 (1) (324 SE2d 437) (1985). Under the former Eavesdropping Statute, it is unlawful for "[a]ny person in a clandestine manner

[2] Wilson's interview was recorded in May 2013. Accordingly, the former version of OCGA § 16-11-62 applies. See Laws 2000, p. 875, §2. It has since been amended in 2015. See Laws 2015, Act 173, §2, effective July 1, 2015.

[3] The State contends that Appellant lacks the standing to challenge the admission of Exhibit 23. However, the State did not raise the issue of standing at trial and it is not necessary to the resolution of this case. See, e. g., *Harper v. State*, 300 Ga. App. 757, 760 (1) (686 SE2d 375) (2009).

intentionally to . . . record . . . the private conversation of another which shall originate in any private place." OCGA § 16-11-62 (1) (2000). Furthermore, the Eavesdropping Statute provides that it is unlawful to "record the activities of another which occur in any private place and out of public view" when recorded without the consent of the person observed. OCGA § 16-11-62 (2) (2000). It also prohibits "any other acts of a nature similar to those set out in [the statute] which invade the privacy of another." OCGA § 16-11-62 (7) (2000).

Our analysis hinges upon whether Wilson was in a "private place" while she was unaccompanied in a police interview room. Former OCGA § 16-11-60 (3)[4] defines "'private place' [as] a place where one is entitled reasonably to expect to be safe from casual or hostile intrusion or surveillance." Our Supreme Court has "looked to Fourth Amendment jurisprudence as a guide when interpreting the scope of privacy protected by [former] OCGA § 16-11-62." (Citations and footnote omitted.) *State*

---

[4] Because Exhibit 23 was recorded in 2013, we apply the former version of OCGA § 16-11-60. See Laws 2002, p. 1432, §2.

*v.Cohen,* 302 Ga. 616, 629 (2) (b) (807 SE2d 861) (2017).[5] In doing so, the court in

*Cohen* noted that

> the application of the Fourth Amendment depends on whether the person invoking its protection can claim a "justifiable," a "reasonable," or a "legitimate expectation of privacy that has been invaded." This inquiry normally embraces two discrete questions. The first is whether the individual, by his conduct, has exhibited an actual (subjective) expectation of privacy – whether the individual has shown that he seeks to preserve something as private. The second question is whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable – whether the individual's expectation, viewed objectively, is "justifiable" under the circumstances.

(Citations and punctuation omitted.) Id. at 630 (2) (b). See also *Quintrell v. State*, 231

Ga. App. 268, 270 (1) (499 SE2d 117) (1998) ("In discerning the scope of the

statutory meaning of 'private place,' we ascribe the same scope as has been given to

the Fourth Amendment protections").

---

[5] Although the dissent in this case points out that Justice Nahmias's special concurrence in *Cohen* calls into question the application of Fourth Amendment jurisprudence to former OCGA § 16-11-62, we note that he also recognizes that there is a precedent for doing so because Georgia Supreme Court "and the Court of Appeals have looked to modern Fourth Amendment case law to determine the scope fo the protection against surveillance devices provided by OCGA § 1-11-62 (2)."

Georgia courts have routinely held that a person does not, without other assurances of privacy not present in the instant case, have a reasonable expectation of privacy while in a police station or police car.[6] See *Thompson v. State*, 191 Ga. App. 906, 907 (383 SE2d 339) (1989) (a "police station is not a 'private place' within the meaning of [the Georgia Eavesdropping Statute]"). In *Meyer v. State*, 150 Ga. App. 613 (258 SE2d 217) (1979), this Court concluded that the trial court correctly suppressed testimony of a police officer as to an incriminating statement he overheard the defendant make in a telephone call made from the front desk reception area of a police station. Id. at 614 (2). This Court reasoned that because the call was made with police personnel within her vicinity and there was no request for more private accommodations, the defendant had no reasonable expectation that her conversation

---

[6] Other jurisdictions have reached similar results. In *Ahmad A. v. Superior Court*, 215 Cal.App.3d 528, 537 (II) (263 Cal.Rptr. 747) (1989), a minor claimed that the surreptitious tape recording of his conversation with his mother in a police interrogation room violated his reasonable expectation of privacy under the Fourth Amendment. The court noted although the officer had left the minor in the room alone with his mother, there was no subjective expectation of privacy because no representations or inquiries were made as to privacy or confidentiality and in a police station as "in the jail house, the age-old truism still obtains: 'Walls have ears'" (footnote omitted). In *Belmer v. Commonwealth*, 36 Va. App. 448, 460-461 (II) (553 SE2d 123) (2001), the Virginia Court of Appeals held that there was no subjective expectation in privacy in a whispered conversation between a mother, the mother's boyfriend, and child who had been left alone in a police interview room.

would be private. Id. at 615 (2) (A). Likewise, in *Dickerson v. State*, 292 Ga. App. 775 (666 SE2d 43) (2008), this Court held that the admission of a recorded conversation between a defendant and his mother in a police interview room did not violate the Fourth Amendment as there was no subjective expectation of privacy when the defendant failed to ask for a private space to converse, there were no representations that the space would remain confidential, and officers were able to enter into the room during the conversation. Id. at 779 (2). Further, in *Burgeson v. State*, 267 Ga. 102, 105-106 (3) (d) (475 SE2d 580) (1996), a hidden tape recording device capturing a conversation between arrestees placed in the back of a patrol car did not violate the Georgia Eavesdropping Statute because the Georgia Supreme Court concluded that in a police car, much like a jail cell, there exists no reasonable expectation of privacy. Id.

In the instant case, even if the evidence shows that Wilson had a subjective expectation of privacy when she was left alone in a police interview room, we conclude that this expectation of privacy was not reasonable or justifiable under the circumstances of the case. Despite Appellant's arguments to the contrary, although Wilson was not charged with a crime, the circumstances still should have alerted her that she did not have a reasonable expectation of privacy under the circumstances.

Wilson had been given a *Miranda* warning; she was aware that she was at the police station to give a statement in connection with a crime; she was in the interview room and had been told that she was not free to leave; the detective had made no representation of privacy or confidentiality; she was aware that the interview had not yet been terminated; and she was aware that Detective Manley or other employees could come into the room at any moment.

We are unpersuaded by the dissent's reliance upon the exception to OCGA § 16-11-62 (2) (A). OCGA § 16-11-62 (2) (A) provides that "it is not unlawful to use any device to observe, photograph, or record the activities *of persons incarcerated* in any jail, correctional institution, or other facility in which persons who are charged with or who have been convicted of the commission of a crime *are incarcerated*[.]" (Emphasis supplied). This subsection clearly applies only to the "persons *incarcerated*[,]" OCGA § 16-11-62 (2) (A). In the instant case, Wilson was not incarcerated or charged with a crime. Rather, she was the victim of a crime who had consented to questioning at the police station.

2. Appellant argues that the trial court erred by permitting the State to introduce Wilson's recorded phone call because it contained impermissible character evidence. We find no error.

10

Specifically, Appellant objects to the admission of the portion of Wilson's phone call where she stated that Appellant's "idea in life is he wants drugs, more drugs, more drugs to sell" because it contained impermissible character testimony. The trial court overruled the objection. In its order on the motion for new trial, the trial court ruled that the evidence of the recorded phone call was admissible "to show a possible source of animosity between the parties and a motive for the stabbing."

In evaluating the admission of this evidence, we note that OCGA § 24-4-404 (b) "is, on its face, an evidentiary rule of inclusion which contains a non-exhaustive list of purposes other than bad character for which other acts is deemed relevant and may be properly offered into evidence." (Citation and punctuation omitted.) *Thompson v. State*, 302 Ga. 533, 539 (III) (A) (807 SE2d 899) (2017). Despite its inclusive nature, OCGA § 24-4-404 (b) "prohibits the admission of such evidence when it is offered *solely* for the impermissible purpose of showing a defendant's bad character or propensity to commit a crime." (Citation and punctuation omitted; emphasis in original.) Id. However, OCGA § 24-4-404 (b) prohibits the admission of "[e]vidence of other crimes, wrongs, or acts . . . . to prove the character of a person in order to show action in conformity therewith. [Such evidence,] however, may be admissible for other purposes, including, but not limited to, proof of motive,

11

opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." This Court reviews a trial court's decision to admit evidence pursuant to OCGA § 24-4-404 (b) only for a clear abuse of discretion. *Kirby v. State*, 304 Ga. 472, 479 (4) (819 SE2d 468) (2018).

"Motive is the reason that nudges the will and prods the mind to indulge the criminal intent." (Citation and punctuation omitted.) *Kirby*, 304 Ga. App. at 486 (4) (b). The "extrinsic evidence must be logically relevant and necessary to prove something other than the accused's propensity to commit the crime charged." (Citation and punctuation omitted.) Id. Because evidence of Appellant's interest in illegal drugs was being offered to show motive and intent, the State was not required to show an overall similarity between the extrinsic offense and the crime for which he was charged. *Whaley v. State*, 343 Ga. App. 701, 707 (3) (a) (i) (808 SE2d 88) (2017). Rather, the extrinsic offense needed to have "*any tendency* to make the existence of *any fact that is of consequence* to the determination of the action more probable or less probable than it would be without the evidence." (Citation and punctuation omitted; emphasis in original.) Id., citing OCGA § 24-4-401.

Here, Wilson's recorded phone conversation revealed a motive for why Appellant would want to injure her. It also demonstrated that the stabbing was

intentional. Wilson told her friend that she felt like she needed to divorce Appellant because he was "not putting forth an effort to" work, and that "he want[s] to live wrong and he wants me to indulge in his living." She stated that "I'm still trying to stand up for myself . . . I'm not going to do it because I know it's wrong. . . . His idea in life is he wants more drugs, more drugs, more drugs to sell. And my idea of life is that's just not what I want. . . . I dealt with that growing up and I just want more for my kids than that." Accordingly, the trial court was authorized to conclude that the reference to Wilson's unhappiness with Appellant's focus on drugs was relevant to why they argued and why he would have purposefully stabbed her. See OCGA § 24-4-404 (b); *Smart v. State*, 299 Ga. 414, 417-418 (2) (a) (788 SE2d 442) (2016) (prior acts of domestic violence by the defendant against the victim were admissible to show motive for the crimes charged because they demonstrated that the defendant used violence to control the victim); *Sharif v. State*, 272 Ga. App. 660, 661-662 (2) (613 SE2d 176) (2005) (under former Evidence Code, evidence that defendant was a drug

dealer was relevant when dispute between the defendant and the victim concerned defendant's drugs as it showed motive).

*Judgment affirmed. McMillian, J., concurs, and McFadden , P. J., dissents.**

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2 (a).**

A19A0433. WILSON v. THE STATE.

McFADDEN, Presiding Judge, dissenting.

Because I cannot agree with the majority's construction of the statute before us, I respectfully dissent from Division 1 of the majority opinion. I would not reach Division 2.

The statute before us is a Part of the pre-2015 version of the Article criminalizing certain invasions of privacy, OCGA § 16-11-60 et seq. The statute before us broadly declares, "No evidence obtained in a manner which violates any of the provisions of this part shall be admissible in any court of this state except to prove violations of this part." OCGA § 16-11-67.

Unlawful eavesdropping or surveillance is one such violation. OCGA § 16-11-62. Specifically, it is unlawful for "[a]ny person, through the use of any device, without the consent of all persons observed, to observe, photograph, or record the activities of another which occur in any private place and out of public view[.]" OCGA § 16-11-62 (2). There are exceptions, one of which I will turn to shortly.

The majority focuses on the phrase "private place," a defined term under former OCGA § 16-11-60 (3) (and redefined in the 2015 version). Drawing on Fourth Amendment law, the majority concludes that no part of a police station can be a private place. Majority at page 8.

But Fourth Amendment law is an uncertain guide to construction of the pre-2015 version of OCGA § 16-11-62 now before us. As Justice Nahmias emphasized in his special concurrence to *State v. Cohen*, 302 Ga. 616 (807 SE2d 861) (2017), it is dubious to look

> even for guidance to modern "reasonable expectation of privacy" Fourth Amendment jurisprudence in interpreting the pre-2015 statutory language defining a "private place" for purposes of OCGA § 16-11-62 (2) as "a place where one is entitled reasonably to expect to be safe from casual or hostile intrusion or surveillance[" because t]hat language was approved by the General Assembly in April 1967, and . . . clearly did not refer to the revolution in Fourth Amendment jurisprudence that occurred only later that year, when in December the United States Supreme Court ushered in a new standard for determining the reach of the constitutional

2

privacy protection and first used the term "reasonable expectation of privacy" in *Katz v. United States*, 389 U. S. 347, 360 (88 SCt 507, 19 LE2d 576) (1967) (Harlan, J., concurring).

*Cohen*, 302 Ga. at 633 (Nahmias, J., concurring in part and concurring specially in part).

Fourth Amendment considerations aside, the majority's conclusion that an interview room in a police station is not a private place is, I suppose, plausible. But as we are talking about a woman alone in a small room with the door shut, it is not compelling.

And there is a countervailing consideration, which I find dispositive. One of the exceptions to OCGA § 16-11-62 (2) provides that it is not unlawful "[t]o use any device to observe, photograph, or record the activities of *persons incarcerated in any jail, correctional institution, or other facility in which persons who are charged with or who have been convicted of the commission of a crime are incarcerated*, provided that such equipment shall not be used while the prisoner is discussing his or her case with his or her attorney[.]" OCGA § 16-11-62 (2) (A) (emphasis added).

I would hold that police stations are among the "other facilit[ies]" covered by subsection (2) (A). If not, it is difficult to imagine what sort of institutions would fall within that same general kind or class. See *Wilson v. Clark Atlanta Univ.,* 339 Ga.

3

App. 814, 834 (2) (794 SE2d 422) (2016) (invoking the principles of noscitur a sociis ("it is known by its associates") and ejusdem generis ("of the same class or nature")). And we should not construe "other facilit[ies]" to be without meaning. See *Fed. Deposit Ins. Corp. v. Loudermilk*, __ Ga. __, __ (2) (826 SE2d 116) (Case No. S18Q1233, decided March 13, 2019).

Necessarily implicit in subsection (2) (A) is a recognition that there are places in jails, correctional institutions, and similar facilities where incarcerated persons would otherwise be "entitled reasonably to expect to be safe from casual or hostile intrusion or surveillance." Former OCGA § 16-11-60 (3). Indeed it appears that recordings like the one at issue — when made of incarcerated persons — fall squarely within the contemplations of subsection (2) (A).

But as the majority notes, Ms. Wilson was not incarcerated or charged with a crime. So our analysis must reckon with the "venerable maxims expressio unius est exclusio alterius (expression of one thing implies exclusion of another) and expressum facit cessare tacitum (if some things are expressly mentioned, the inference is stronger that those not mentioned were intended to be excluded)." *State v. Davis*, 303 Ga. 684, 692 (2) (814 SE2d 701) (2018). The express authorization in

4

subsection (2) (A) to record incarcerated persons in such facilities implicitly excludes authorization to record other persons, such as Ms. Wilson.