**FOURTH DIVISION**
**MCFADDEN, P. J.,**
**WATKINS and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be
physically received in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**MARCH 27, 2026**

# In the Court of Appeals of Georgia

A26A0176. HALL v. THE STATE.

PADGETT, Judge.

Kenneth Hall was found guilty of a single count of theft by conversion following a jury trial and was sentenced by the trial court. Hall filed a timely motion for new trial, which was denied. He appeals from that denial, alleging that the evidence was insufficient to support the conviction, the trial court erred in allowing the accusation to be redacted, the trial court erred in allowing certain evidence to be presented to the jury, and that he received ineffective assistance of counsel. Finding no reversible error, we affirm.

"On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence." *Rodriguez v. State*, 375 Ga. App. 283, 283 (916 SE2d 10) (2025) (citation modified). Viewed in that light, the record shows that a family that lived in the same community as Hall and his wife saw some of Hall's home renovation and interior design work displayed on social media and contracted with Hall for work they wanted to have done on their home.[1] Between July 2015 and October 2015, the family issued a series of seven checks to Hall in the total amount of $28,244.47. These checks were issued for Hall to perform renovations on the family's home, restore some of their furniture, and to purchase specific furniture and decor. Following the payments being made, Hall advised the family that the work would be completed by the fall of 2015. Hall began to perform some of the services agreed to, but never completed the work and never delivered most of the furniture and decor. In addition, some of the family's furniture which Hall was to have reupholstered and refinished was removed from the family's home by Hall, but never returned.

---

[1] The Halls contracted with Appellant and his wife to have the work performed. Hall's wife was named as a party to the crime within the accusation that charged Hall with theft by conversion. However, Hall's wife entered a guilty plea to the charges made against her and did not proceed to trial with Hall.

The family contacted Hall on numerous occasions to voice their complaints and concerns about the unfinished work and Hall assured them that he would "get to it." When the family became more insistent with their concerns, Hall provided a number of excuses, including items not being shipped by the manufacturer on time, waiting on a painter, Hall's vehicle being inoperable, and Hall's wife having an injury, among other excuses. The family ultimately requested, in person and by email, that Hall either complete the work or return their funds, but Hall did not respond to that request. The family's complaints and requests continued through September 2017, when they received notice that Hall had filed for bankruptcy and listed the family as creditors. Hall's bankruptcy petition listed the debt owed to the family as totaling $30,000, a sum the family agreed was owed to them.

The family ultimately contacted law enforcement and the resulting investigation revealed that Hall never deposited the family's checks directly into his own account, but within days of the checks being cashed by Hall, cash deposits were made into Hall's bank account in the exact amount of the checks issued by the family. Law enforcement officers were unable to identify anything other than minor purchases made by Hall for materials or decor for the family's home renovation, but did find that Hall was paying his own bills using the money provided by the family.

Under OCGA § 24-4-404(b), evidence was offered from a former landlord of Hall's who testified that she had to evict the Halls from the residence she rented to them when the rent payments became three months in arrears. The eviction occurred in March 2015, just a few months before Hall entered into the contract with the family.

Also under OCGA § 24-4-404(b), two other witnesses testified, who had also contracted with Hall to have home renovation work performed. One witness testified that she paid Hall $6,000 to have work performed on her home in 2015, but that Hall never did the work. A second witness testified that he contracted with Hall in 2010 to perform renovations on his home. That witness testified that he paid Hall $115,000 for the renovations, but when the house was destroyed by fire during the renovation period, he asked Hall for an accounting and Hall never provided any accounting. Ultimately, that witness reported the events to law enforcement and both Hall and his wife were charged in that case, and an order was entered requiring payment of restitution totaling $60,000.[2]

1. Hall alleges that the evidence presented at trial was insufficient to support his conviction. Our Supreme Court has held that

---

[2] We assume that Hall's wife was ordered to pay restitution in that separate case as the parties stipulated that Hall has no prior convictions.

[w]hen evaluating a challenge to the sufficiency of the evidence, we view all of the evidence admitted at trial in the light most favorable to the prosecution and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. This evaluation essentially addresses whether the [State's] case was so lacking that it should not have even been submitted to the jury. Our limited review leaves to the jury the resolution of conflicts in the evidence, the weight of the evidence, the credibility of witnesses, and reasonable inferences to be made from basic facts to ultimate facts.

*McGruder v. State*, 303 Ga. 588, 590(II) (814 SE2d 293) (2018) (citation modified).

Hall claims that the State failed to prove criminal intent and, instead, merely established a breach of contract. We disagree.

Georgia law is clear that the theft by conversion statute, OCGA § 16-8-4, is "intended to punish fraudulent conversion, not breach of contract, and in order to avoid the constitutional prohibition against imprisonment for debt, the State must prove fraudulent intent." *Scarber v. State*, 211 Ga. App. 260, 260 (439 SE2d 83) (1993) (citation omitted). Theft by conversion requires proof of criminal intent which we define as "the knowing appropriation of funds or property belonging to another." *Ward v. State*, 376 Ga. App. 531, 536(1) (920 SE2d 151) (2025) (citation omitted). "It is the presence of a fraudulent intent that distinguishes theft by conversion from a simple breach of contract." Id. (citation omitted).

5

The question of intent is peculiarly a question of fact for determination by the jury, which may infer a defendant's intent from the evidence presented at trial. The jury may find the requisite intent upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act. Further, the jury is authorized to discredit the defendant's statements about his motivations and find, instead, that the defendant possessed the requisite criminal intent. Where the jury finds the requisite intent, that finding will not be reversed on appeal provided there is some evidence supporting the jury's inference.

Id. at 537–38(1)(b) (citation modified).

Here, the State provided evidence from which the jury could conclude that Hall was experiencing financial distress and took money from the family but instead of providing the promised goods and services, he used the funds for other unauthorized purposes, including payment of his personal obligations. The State's case included evidence establishing that Hall was unable to pay his existing obligations at the time he contracted with the family. The evidence also included testimony from other individuals who contracted with Hall, for whom Hall failed to provide promised services notwithstanding those witnesses' payments to him. The evidence also established that Hall provided a number of excuses to the family for his failure to perform, concluding with Hall making no response to written and oral communications from the family. The evidence was undisputed that Hall received

6

money from the family and that he did not use that money for the purpose specified. See *Cox v. State*, 275 Ga. App. 895, 895–96 (622 SE2d 11) (2005). Under these circumstances, the jury was authorized to infer that Hall acted with fraudulent intent and to find him guilty of theft by conversion under OCGA § 16-8-4.

Hall contends that this case should be controlled by our holding in *Myrick v. State*, 210 Ga. App. 393 (436 SE2d 100) (1993). In *Myrick*, the defendant was a contractor who was paid to perform home improvements to include concrete work, but there was no specific application of funds anticipated by the underlying contract. Id. at 393–94. The homeowners in that case sought a criminal warrant after an approximate four-month wait, during which time there was a series of rain storms that may have impeded the concrete work. Id. at 394. We held that the evidence did not support a conviction for theft by conversion under the facts presented in the record. Id. at 395. In contrast, the contract in this case did anticipate specific applications for the funds paid to Hall. The family here waited over three years to have the work performed at their residence, attempted to discuss the situation with Hall which were met with excuses and, eventually, a complete lack of communication. Hall also took furniture belonging to the family for refinishing which he never returned.

The facts of this case are much more in line with those in *Ward*, supra, where a contractor took a deposit to construct a swimming pool and went out of business without ever returning the deposit. *Ward*, 376 Ga. App. at 532. After filing for bankruptcy, the defendant there was criminally charged and convicted of theft by conversion. Id. at 532–33. The State provided evidence, under OCGA § 24-4-404(b), from other customers who had paid for a pool and their pools were not completed or, in some cases, never started. Id. at 534. In finding that the evidence in that case supported the conviction, this Court held that the jury was authorized to infer that the defendant "used the funds to pay either his personal expenses or his company's expenses on unrelated matters." Id. at 538(1)(c). Under OCGA § 16-8-4(a), the offense of conversion involves "a person knowingly converting the funds 'to his own use in violation of the agreement.'" *Ward*, 376 Ga. App. at 538(1)(c). "'His own use' does not refer exclusively to using the funds for unapproved personal expenses; rather, it refers to using the funds for a chosen use other than the purpose specified in the agreement." Id.

The jury in this case was authorized to find that Hall agreed to provide the family certain goods and services that he did not provide, and that he deposited their funds into his own personal account from which he satisfied his personal financial

obligations. There was sufficient evidence from which the jury could find that Hall committed the charged offense, rendering this enumeration of error meritless.

2. In a related argument, Hall argues that because the accusation in this case included language relating to prior convictions which were not established, the evidence was insufficient to support his convictions. We are not persuaded.

The accusation in this case charged Hall

> with the offense of THEFT BY CONVERSION OCGA § 16-8-4, for the said accused, in the County of Fulton and State of Georgia, on the 16th day of July, 2015 through 5th day of October, 2015, as a part [sic] to the crime with [his wife], did, after having lawfully obtained United States Currency, the property of [the family to whom he was to provide renovation work] of a value of at least $5[,]000 but less than $25[,]000[ ], under an agreement and known legal obligation to make specified disposition of such property, knowingly and unlawfully convert property to accused's own use in violation of said agreement and legal obligation; *the accused having two prior convictions for a violation of Code Sections 16-8-2 through 16-8-9*.

(emphasis added).

Under Georgia law, the punishment for theft offenses is governed by OCGA § 16-8-12. The mandated sentence changes depending on the monetary value of the property which was subject of the theft. See OCGA § 16-8-12(a)(1)(A)–(C). For example, in this case, it was alleged that the monetary value of the theft was more

than $5,000 but less than $25,000. Under OCGA § 16-8-12(a)(1)(B), the sentence range is not less than one year to ten years of imprisonment. If the amount of the theft had been less than $5,000 or more than $25,000, a different subsection of the statute would have been applicable, and the sentence range would have changed accordingly. OCGA § 16-8-12(a)(1)(A) and (C). OCGA § 16-8-12 also has a different punishment scheme if the defendant previously has been convicted of two or more theft offenses, regardless of the monetary value of the theft. OCGA § 16-8-12(a)(1)(D). If the defendant has two or more prior convictions for any violation of OCGA §§ 16-8-2 through 16-8-9, the defendant is guilty of a felony and the applicable sentencing range is one to five years. Id.

This Court previously held that the charging instrument alleging that a defendant committed a theft offense need not allege the amount of the theft or allege prior convictions to withstand a demurrer. *Roman v. State*, 300 Ga. App. 526, 527(1) (685 SE2d 775) (2009) (value of the stolen property is not an essential element of the crime of theft by taking but, instead, is only relevant to sentencing); *White v. State*, 265 Ga. App. 302, 303–04(1) (596 SE2d 9) (2003) (prosecution not required to prove recidivism as an element of theft crime). Unlike other criminal offenses, "there are not two theft by taking crimes, one being a misdemeanor and the other being a felony." *Roman*, 300 Ga. App. at 528(2) (quotation marks omitted). "Rather, 'there

is only one such crime, and upon conviction for it, the punishment only is determined by the value of the property taken.'" Id. The same is true for recidivism. *Redd v. State*, 281 Ga. App. 272, 274 (635 SE2d 870) (2006).

It is uncontroverted that Hall had no prior convictions for any crime. The language appearing with emphasis above as part of the accusation was simply inapplicable to Hall's case and should not have appeared in the accusation. Hall's counsel did not raise any issue with the accusation prior to trial. However, the trial court agreed to Hall's trial counsel's request for a curative instruction on the issue and ordered the prosecutor to redact any reference to prior convictions from the accusation. Hall's trial counsel did not object to the accusation being redacted, the redacted version being read to the jury, or voice any objection when the curative instruction was provided to the jury.

Notwithstanding that Hall failed to preserve the issue for our review, he argues that the erroneous language in the accusation should result in a fatal variance between the allegations of the accusation and the proof at trial. Even if he had not waived this argument by failing to raise it during his trial, it is one that this Court has squarely rejected. The State is not required to prove recidivism as an element of a theft crime. *White*, 265 Ga. App. at 303–04(1). And although the State may choose to allege prior convictions in a charging instrument, "it is error for the jury to be

11

made aware of the prior convictions during the guilt/innocence phase of the trial." Id. at 304(1) (citation modified). In fact, we have specifically held that a charging instrument that includes information relating to recidivism should be redacted. Id. Because recidivism is not an element of the offense of theft by conversion and is only relevant to sentencing, and because the trial court correctly provided a redacted copy of the accusation to the jury without objection, there could be no fatal variance under the facts of this case and Hall's enumeration of error provides no basis for reversal. See id.; *Redd*, 281 Ga. App. at 274. See also *Brinson v. State*, 289 Ga. 551, 552–53(4) (713 SE2d 862) (2011) (appellant cannot claim error in trial court sending redacted copy of indictment to jury where he made no objection before the trial court).

3. Appellant next argues that the trial court erred in allowing other acts evidence under OCGA §§ 24-4-404(b) ("Rule 404(b)") and 24-4-403 ("Rule 403"). Under Rule 404(b), evidence of other crimes, wrongs, or acts is admissible only under limited circumstances. Such evidence is not admissible to prove that the defendant acted with a certain propensity under prior similar facts, but it is admissible for other purposes. The statute provides a non-exhaustive list of permissible uses of such evidence, including as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. OCGA §

24-4-404(b). To be deemed admissible, such evidence must meet the familiar three-part test:

> (1) the other acts evidence is relevant to an issue in the case other than the defendant's character, (2) the probative value is not substantially outweighed by undue prejudice under [Rule 403], and (3) there is sufficient proof that a jury could find by a preponderance of the evidence that the defendant committed the acts.

*Lofland v. State*, 357 Ga. App. 92, 94(1) (850 SE2d 175) (2020) (citation modified). Rule 404(b) is a rule of inclusion that allows extrinsic evidence unless it tends to prove only criminal propensity. *Booth v. State*, 301 Ga. 678, 682(3) (804 SE2d 104) (2017).

"With regard to intent, a defendant puts his intent in issue when he pleads not guilty unless he takes affirmative steps to withdraw intent as an element to be proved by the State." *Ward*, 376 Ga. App. at 539(2)(a) (citation modified). "Motive is the reason that nudges the will and prods the mind to indulge the criminal intent." *Wilson v. State*, 351 Ga. App. 50, 55(2) (830 SE2d 407) (2019) (citation modified).

Rule 403 plays an overarching role as to the admission of all evidence, but is particularly applicable to evidence offered under Rule 404(b). Rule 403 authorizes a trial court to prohibit the admission of relevant evidence if the probative value of that evidence is "substantially outweighed by the danger of unfair prejudice, confusion

of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403. "[I]n a criminal trial, inculpatory evidence is inherently prejudicial; it is only when unfair prejudice substantially outweighs probative value that the rule permits exclusion." *Harris v. State*, 314 Ga. 238, 263(3)(a) (875 SE2d 659) (2022) (citation modified).

> It should be reiterated that the exercise of discretion under Rule 403 is case-specific and usually turns on the trial court's assessment of the probative value and prejudicial effect of the particular evidence at issue. But we also recall that exclusion of evidence under Rule 403 is an extraordinary remedy that should be used only sparingly to prohibit matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.

*Nails v. State*, 357 Ga. App. 515, 519(1) (851 SE2d 144) (2020) (citation modified). On appeal, a trial court's decision regarding admissibility of evidence under Rule 404(b) is reviewed for a clear abuse of discretion. *Wilson*, 351 Ga. App. at 55(2) (citing *Kirby v. State*, 304 Ga. 472, 479(4) (819 SE2d 468) (2018)).

During the trial, the State offered evidence from a former landlord and two prior clients of Hall's. The testimony offered by the landlord tended to establish motive, showing that Hall was having difficulty meeting his financial obligations in the months leading up to his interaction with the family against whom he committed theft by conversion. The testimony offered by his two prior clients tended to

establish intent as he obtained payment from those clients and did not fulfill his obligations. Because Hall pleaded not guilty to the charged offense and did not take any affirmative steps to withdraw his intent as an element that had to be proven by the State, his intent was at issue. He made his intent a primary point of contention throughout the trial, arguing to the jury that this case was really a civil breach of contract matter and did not constitute criminal theft by conversion. As noted previously, intent is the element that separates a breach of contract from a criminal theft by conversion. *Ward*, 376 Ga. App. at 536(1). The evidence was relevant to an issue other than Hall's character, the probative value was not substantially outweighed by the danger of unfair prejudice, and there was no question that Hall was involved in the other acts involving his former landlord and both of his former clients. Moreover, the trial court minimized the risk of undue prejudice by giving the jury a limiting instruction on the use of the evidence offered under Rule 404(b). See *Ward*, 376 Ga. App. at 541(2)(a). The trial court did not clearly abuse its discretion in admitting the evidence under Rule 404(b).

4. Hall also argues that he received ineffective assistance of counsel in four separate ways. To prevail on an ineffective assistance of counsel claim, a defendant must show both that counsel rendered deficient performance and that the deficient performance prejudiced his defense. *Roberts v. State*, 322 Ga. App. 659, 663(3) (745

15

SE2d 850) (2013). To satisfy the first prong of this test, an appellant must show that trial counsel performed in "an objectively unreasonable way, considering all the circumstances, and in light of prevailing professional norms." *Crider v. State*, 356 Ga. App. 36, 41(1) (846 SE2d 205) (2020). The second prong requires an appellant to establish that there is a reasonable probability that the trial outcome would have been different in the absence of the alleged ineffective assistance provided by trial counsel. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (citation modified).

"[T]his burden — though not impossible to carry — is a heavy one." *Mulkey v. State*, 366 Ga. App. 427, 437(4) (883 SE2d 173) (2023) (citation modified). There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance and the reasonableness of counsel's conduct is viewed from the perspective known at the time of trial and under the unique circumstances of the appellant's case. *Roberts*, 322 Ga. App. at 663(3). "Decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." *Burse v. State*, 377 Ga. App. 326, 328(3)(b) (922 SE2d 479) (2025) (citation modified). If the appellant fails to establish

either prong of this familiar test, we are not required to evaluate the remaining prong. *Smith v. State*, 373 Ga. App. 33, 45(3) (907 SE2d 327) (2024).

(a) Hall alleges that trial counsel was deficient for failing to move to strike the inaccurate portion of the accusation prior to trial and in failing to object to the redaction of the accusation during trial. As discussed above, the accusation that charged Hall with theft by conversion included an allegation that he previously had been convicted of two or more counts of theft. That allegation was inapplicable to Hall. The trial court read the accusation, including the inapplicable portion, to the jury as a part of voir dire. At the conclusion of the evidence and outside the presence of the jury, counsel discussed with the trial court that the accusation included the inapplicable allegation relating to prior convictions. The trial court suggested that it would advise the jury that the State made an error in its charging instrument and that Hall did not have any prior convictions. When offered an opportunity to respond, Hall's trial counsel indicated that there was no objection to the court's suggested remedy and that counsel's only request was a curative instruction which the trial court agreed to give. The trial court then directed the prosecutor to redact the accusation so that it could be provided to the jury during its deliberations. The trial court later specifically instructed the jury that the State had made an error in the charging instrument and that Hall had no prior convictions. When asked whether the

redaction and curative instruction was sufficient, Hall's trial counsel responded that it was sufficient and made no further objection.

As noted previously, whether Hall had prior convictions was not an element of the crime of theft by conversion. Those facts would be relevant for sentencing but the jury was not required to determine whether the State had proven those facts. The jury was instructed to ignore the improper allegations of the accusation and were specifically told that Hall had no prior convictions by the trial judge. Hall has failed to establish prejudice. Juries "are presumed to follow curative instructions in the absence of proof to the contrary." *Lewis v. State*, 314 Ga. 654, 667(4)(b) (878 SE2d 467) (2022) (citation modified). The accusation charged Hall with a crime but contained inapplicable language. As noted above, prior convictions are not essential elements of the crime. This enumeration therefore affords no basis for reversal.

(b) Hall argues that trial counsel provided ineffective assistance by failing to request a non-pattern jury charge clarifying that theft by conversion requires more than a mere breach of contract. The trial court instructed the jury on the elements of the crime and gave several different charges of the requisite criminal intent which must be established by the evidence. These pattern charges sufficiently covered the issue of criminal intent and explained that a mere breach of an "agreement or legal obligation" is insufficient to support a verdict of guilty.

"When a claim of ineffective assistance is based on the failure to request a jury charge, the relevant inquiry is whether the charge, if it had been requested, was warranted by the evidence, and if it had been given, whether there is a reasonable probability that it would have changed the outcome of the trial." *Mullins v. State*, 364 Ga. App. 200, 202(a) (874 SE2d 378) (2022) (citation modified). Assuming, without deciding, that the evidence was sufficient to authorize the jury charge suggested by Hall, he has failed to establish prejudice. Trial counsel extensively argued that the State was required to prove criminal intent and that the entire matter was really a civil breach of contract case. The charge as a whole sufficiently covered the concept of criminal intent. The enumeration thus provides no basis for reversal.

(c) During the testimony of a prior client who testified, under Rule 404(b), about his experiences with Hall and Hall's wife, the State asked the witness whether his case involving the Halls had been indicted. Hall's trial counsel objected and that objection was overruled. After indicating that the case involving him and the Halls had been indicted, the witness was asked whether there was a conviction. In a somewhat unresponsive answer, the witness testified that the prosecutor in that case told the witness that a plea offer had been made but that Hall was gravely ill. Trial counsel then lodged another objection which the trial court sustained and which interrupted the witness's response. The State then asked the witness whether there

19

was an order of restitution issued in the witness's case involving the Halls. The witness indicated that a restitution order of $60,000 had been entered. When the State attempted to delve into the issue of restitution further, trial counsel made an objection which was sustained and the State asked no additional questions on this topic.

Hall argues that trial counsel was ineffective for failing to object to the witness's use of the phrase "plea agreement" under OCGA § 24-4-408.[3] Trial counsel lodged a number of appropriate objections to the entire line of questioning and those objections were sustained. The testimony that was given on the topic of the resolution of that separate case involving Hall and his wife consisted only of a single reference to the fact that a plea agreement was offered to both Hall and his wife but that the prosecutor learned that Hall was gravely ill. The substance of the plea agreement offer was not conveyed and the State did not seek to have the witness describe what offer had been made. The State's question did not attempt to establish the terms of any plea agreement and the witness did not reveal any such terms. Under these circumstances, OCGA § 24-4-408 was not implicated by this exchange.

---

[3] Rule 408 generally excludes evidence of compromise and offers to compromise except in situations not applicable here.

Hall argues that the State attempted to use his wife's "guilty plea" involving the Rule 404(b) witness to convict him. Our review of the record shows that no supporting documentation involving the resolution of that separate case involving the Rule 404(b) witness and the Halls was offered into evidence, no party mentioned what plea agreement had been extended or the terms of any plea agreement which Hall's wife ultimately accepted. The enumeration is without merit.

(d) Finally, Hall argues that we should consider the cumulative effect of certain errors, as established by *State v. Lane*, 308 Ga. 10 (838 SE2d 808) (2020). To establish cumulative error, Hall must show that at least two errors were committed during the course of his trial and, when considered along with the entire record, the multiple errors so infected the jury's deliberation that they denied him a fundamentally fair trial from a due process perspective. *Buenrrostro v. State*, 370 Ga. App. 659, 668–69(4) (897 SE2d 626) (2024). We have considered collectively any alleged errors by Hall's trial counsel and the trial court, and conclude that the cumulative prejudicial effect of such errors, if any, does not warrant a new trial. See *St. Germain v. State*, 358 Ga. App. 163, 169(5) (853 SE2d 394) (2021).

*Judgment affirmed. McFadden, P. J., and Watkins, J., concur*